116 So.2d 141 (1959)
Thomas H. ROBERTSON, Plaintiff-Appellant,
v.
Mrs. Mattie Z. MORGAN et al., Defendants-Appellees.
No. 4892.
Court of Appeal of Louisiana, First Circuit.
November 16, 1959.
Rehearing Denied December 21, 1959.
*142 Kantrow, Spaht, West & Kleinpeter, Baton Rouge, for appellant.
Laycock & Stewart, Sargent Pitcher, Jr., Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, TATE and CULPEPPER, JJ.
TATE, Judge.
The plaintiff seeks by these proceedings to establish his title to an 8.8 acre tract of land some ten miles east of the City of Baton Rouge. The trial court sustained the defendants' pleas of prescriptive acquisition by thirty years' continuous adverse possession. LSA-Civil Code Articles 3475, 3499. The plaintiff appeals from the consequent dismissal of his suit.
The common author of both plaintiff's and defendants' titles is Alice Goodrich Atkinson. In 1898, plaintiff's father acquired from her the northern 40 acres of an 80-acre tract owned by her; in 1902, the defendants' predecessor in title purchased from her the remaining (the southern) forty acres. Plaintiff subsequently inherited the northern forty acres from his parents.
Some time after he bought in 1898, but not later than 1910, plaintiff's father erected a fence which for all practical purposes has been treated through the years as the boundary between the two 40-acre tracts into which the Atkinson property was divided by the above-described sales. Plaintiff Robertson admits that the present fence separating his property from the disputed strip possessed by defendants is situated on the identical fence line upon which his father initially erected the old fence. His claim to the strip in controversy is based upon a contention that the correct location by titles of the boundary line is approximately 300 feet south of this fence line. It is not claimed that plaintiff or his predecessors in title were ever in physical possession of the disputed strip south of the fence.
While the defendants rely also upon a claim to the strip based upon their recorded titles, it is not necessary to discuss such contention because we find that the trial court correctly sustained defendants' pleas of thirty years' acquisitive prescription. For the record shows that, following his acquisition of the southern 40 acres in 1912, Robert Morgan took and maintained corporeal possession of the disputed strip along with the other land to the south of it, and that such possession was maintained without interruption and continuously thereafter up through 1957, when plaintiff filed this suit by: Morgan; his widow, the present defendant Mrs. Morgan, who succeeded him in title by inheritance and as surviving spouse; and by the other defendants, who acquired from Mrs. Morgan by descriptions which included the portion of the disputed acreage which they purchased by warranty deeds.
In urging reversal of the trial court judgment, plaintiff's able counsel essentially contends: (1) that there is no showing that Morgan possessed as owner, especially since the boundary fence was not erected by him but by plaintiff's father and is not specifically shown to have been intended as a boundary, and also because a cattle dipping vat erected by Morgan on the disputed strip was used by the public as well as by Morgan; and (2) that the defendants' possession, if adverse, was not continuous for thirty years, since allegedly following Morgan's death in 1924 the boundary fence was allowed to deteriorate to a great extent until its *143 restoration in 1936 when Mrs. Morgan again became active in cattle-raising.
Under the practically uncontradicted testimony, it is not open to dispute that in 1912 Morgan took possession of the disputed tract along with the property to the south of it purchased by him and deriving from the common author, Mrs. Atkinson. The strip in controversy, together with the other property purchased by Morgan, was enclosed in a single tract by the Robertson fence connecting up with other fences surrounding the remainder of Morgan's property. In 1913 Morgan constructed a dipping vat on the eastern end of the disputed strip, immediately south of the Robertson fence,[1] and about five years later he constructed a cattle watering pond located either on the center or the western portion of the strip. Soon after his acquisition in 1912 he constructed a private roadway across the strip, leading from the public highway to his house, which was used as the principal entrance to his home until, in the 1920's, another entranceway was constructed on another portion of his property. He exercised exclusive cattle grazing privileges over the enclosed property, maintaining the fence in question and others surrounding the entire tract so as to keep his own cattle in, and the cattle of others out.
The exercise of exclusive grazing privileges over the land, accompanied by the maintenance of the enclosures, constituted by itself corporeal possession over the entire tract. See Hebert v. Chargois, La.App. 1 Cir., 106 So.2d 15. Aside from this circumstance, the exercise as owner of acts of physical possession of an enclosed tract (such as by building a dipping vat, road, and watering pond thereupon) constitutes a taking of possession of all that is included within the limits evidenced by the enclosures. LSA-C.C. Art. 3437; Hill v. Richey, 221 La. 402, 59 So.2d 434; Thompson's Succession v. Cyprian, La.App. 1 Cir., 34 So.2d 285; Ranger Land Co. v. Story, La.App. 1 Cir., 200 So. 649.
With regard to plaintiff's second contention that the adverse possession was not continuous, the cited cases likewise illustrate that corporeal possession thus commenced is preserved and presumed to continue (unless interrupted by the possession of another) so long as there remain vestiges of works erected upon the property by the possessor, even though the enclosures themselves deteriorate. See also, LSA-C.C. Arts. 3442, 3501, 3502. (However, the remains of the enclosures should be sufficient to fix the limits of the property possessed. Sattler v. Pellichino, La.App. 1 Cir., 71 So.2d 689.)
It is undisputed that the dipping vat, private roadway, and cattle watering pond constructed by Morgan are still clearly evident and even useable, and have been throughout the years since Morgan constructed them. The testimony of plaintiff's witnesses is, simply, that following Morgan's death, the fence separating the disputed strip from the plaintiff's land was allowed to deteriorate, so that portions of it lay upon the ground and so that there were three or so gaps of about fifty feet along its 1,600 feet of length; but these facts if accepted as correct (defendants' witnesses testify contradictorily that the fence was maintained from 1912 to date), do not under the above jurisprudence and codal articles constitute an abandonment of possession by those succeeding Morgan *144 in title, or an interruption of their possession. Civil possession sufficient to cause prescription to accrue in their favor was continued, in the absence of any actual interruption of their possession, by the vestiges of the works erected by Morgan upon the property; and the limits of the possession were evidenced during this period by the clearly visible fence or remains of it along the old fence line.
Plaintiff further contends that his predecessor and himself, by occupying part of the tract purchased by them, are presumed to possess according to the full limits of their title (LSA-C.C. Arts. 3437, 3498), and that they thus constructively possessed the disputed tract within the limits of their title so as to interrupt or prevent the continuous adverse possession by Morgan and those who succeeded him in title. This contention is without merit, for whatever constructive possession of the strip plaintiff's father may have had by virtue of title to it was lost by the corporeal detention of the property by Morgan in 1912 and following (if not earlier, by the acts of Morgan's predecessors in title following their acquisition of the tract from the common author in 1902). LSA-C.C. Art. 3449. Thereafter, even if Morgan or his successors in title had ceased to have the property in actual custody, Morgan's possession initiated as it was by corporeal detention, and that subsequently of his successors in title, is by law considered continued without interruption since there was no intervening usurpation of possession or corporeal detention by another. LSA-C.C. Arts. 3442, 3449.
Finding that the defendants and their predecessors in title have maintained continous, uninterrupted, public, and unequivocal possession from 1912 to date of the property in dispute, we think that the trial court correctly sustained their pleas of thirty-years' acquisitive prescription and dismissed plaintiff's suit.
Affirmed.
NOTES
[1] We do not perceive any force in the plaintiff's argument that Morgan's dipping vat on the strip did not constitute an act of possession by him, allegedly because the public in general was permitted to use it. Its construction by Morgan on the property was an act done by him in the quality of owner of the property; its use by the public, pursuant to Morgan's public-spirited interest in governmental cattle dipping programs, proceeded from his permission as landowner that the public do so. In fact, there is evidence that plaintiff's father objected (because of the smell, etc.,) to its location so near his own property, and undoubtedly the owner of the land could have prevented its construction or use upon his own property.