300 So.2d 599 (1974)
W. J. GAYLE & SONS, INC., Plaintiff and Appellant, Defendant in Reconvention,
v.
Raymond D. DEPERRODIL et al., Defendants and Appellees, Plaintiffs in Reconvention.
No. 4620.
Court of Appeal of Louisiana, Third Circuit.
September 11, 1974.
Rehearings Denied October 10, 1974.
Writs Refused November 27, 1974.
*600 Anderson, Leithead, Scott, Boudreau & Savoy by Everett R. Scott, Jr., Lake Charles, for plaintiff-appellant.
Pugh, Buatt, Landry & Pugh by Lawrence G. Pugh, Jr., Crowley, for defendant-appellee.
Before FRUGÉ, DOMENGEAUX, and WATSON, JJ.
DOMENGEAUX, Judge.
This suit involves a dispute as to the ownership of a 150 foot wide strip of land in Section 13, Township 12 South, Range 1 West, located near Gueydan in Vermilion Parish, Louisiana. Said strip encompassing about 18 acres runs approximately one mile in length and is situated 30 feet West of the East boundary of the said Section 13.
W. J. Gayle & Sons, Inc. initially filed this suit as a "possessory" action praying to be maintained in and restored to possession of the aforementioned tract after an alleged disturbance in law and in fact resulting from the recordation of an act of sale of approximately three acres from the strip on December 28, 1971, and from the Vendee's entry onto the land in controversy for survey staking purposes on or about January 14, 1972. The defendants answered *601 and reconvened alleging their possession. By amended Answer and Reconventional Demand, defendants admitted to be out of possession, alleged legal ownership to the strip of land, and converted this action to a "petitory" action by praying for recognition of their legal ownership and the surrender of possession by the original plaintiff. From a judgment in favor of the defendantsplaintiffs in reconvention, W. J. Gayle & Sons, Inc. has appealed suspensively to this court.
The following unscaled plat with legend is furnished to illustrate the areas involved, the claims thereto, and other pertinent data.

*602 The elements in the chain of title of the disputed portion of the aforementioned Section 13 are as follows:
On March 13, 1883, by patent from the State of Louisiana, the entire section, containing approximately 640.8 acres, was acquired by Francois and Jean Gueydan. Subsequently on June 5, 1883, Francios Gueydan sold his share in the property to Jean Gueydan.
On October 21, 1891, Jean Gueydan sold the section of land to Calvin Garland, reserving a space of 30 feet around the section for public use for a road, drainage, or irrigation.
Calvin Garland sold the same tract to Laura B. and Mettie F. Garland on June 28, 1899 with the same 30 foot reservation around the section.
Subsequently by cash deed dated November 17, 1899, the Garland sisters sold to Abrom Kaplan for $272.70 a strip of the section described as 150 feet wide, "lying and being situated thirty (30') West of the East boundary of said Sec. Thirteen, running North and South parallel to the East boundary line of Sec. 13."
Two chains of title occur after this date, one in favor of plaintiff's assertion of ownership and one in favor of the defendants' claim.
The plaintiff's title chronologically relies upon the following:
(1) On May 6, 1901, Abrom Kaplan sold by act of sale for $272.70 back to Laura B. and Mettie F. Garland a 100 foot strip, being the Western 100 feet of the strip acquired by Kaplan on November 17, 1899.[1]
(2) By Judgment in the Succession of Laura B. Garland, dated February 18, 1942, her sole heirs acquired an undivided ½ interest in the Section. However, said description excluded two acres (more or less) previously sold, a 130-foot strip along the Northern line of the Section, and a 180 foot strip along the entire Eastern side of the Section.
(3) On March 7, 1942, the aforementioned heirs sold their share in the Section to Mettie F. Garland. Said deed excluded a 30 foot strip along all sides of said Section, a 100 foot strip along the northern side of the section adjacent to the 30 foot strip reserved, and a strip 50 feet running along the Eastern side. Also excluded was a parcel containing 2 acres more or less in the Northwest corner of the section.
(4) A judgment on October 25, 1957, in the Succession of Mettie F. Garland granted her heirs the whole of Section 13 "subject to all railroad, pipeline, public highway, canal and drainage rights of way". The deed also excepted two and one-half acres formerly sold.
(5) Said heirs transferred to the plaintiff herein, a Lake Charles Corporation, on February 15, 1968, Section 13 less the 2.5 acres previously sold to Wright Warehouse Co., a 100 foot strip situated along the North line of Section 13 previously sold to Louisiana Western Railroad Co., and a 150 foot strip situated along the Eastern line of the Section sold to Abrom Kaplan "by deed recorded under Entry Number 12031 of the Conveyance Records of Vermilion Parish, Louisiana."
Included in said cash deed was also the following provision:
"Vendors also convey to vendee herein any right, title and interest which they *603 might have in and to those portions excepted as aforesaid from the tract herein conveyed; but for these said excepted tracts, the vendors do not warrant title but do convey any right which they might have thereto, including rights obtained by acquisitive prescriptive possession."
The defendants' title in turn chronologically relies upon the following:
(1) On July 17, 1900 (prior to the 1901 sale by Kaplan to the Garland sisters) Abrom Kaplan sold to Issac M. Lichenstein and Isadore Hechinger a large number of properties including a 150 foot strip "situated in the Eastern portion of Section Thirteen (13) and described as lying and being Thirty (30') feet West of the East boundary line of said Section 13." Thereafter Lichenstein and Hechinger transferred the property obtained to the Lechenstein and Hechinger Canal Co. in exchange for shares therein.
(2) On August 8, 1908, the aforementioned canal company sold by deed the 150 foot strip to United Irrigation and Rice Milling Co.
(3) On September 1, 1926, the same United sold the strip to Acadia Vermilion Rice Irrigation Co.
(4) The liquidators of Acadia Vermilion Rice Irrigation Co. subsequently sold the 150 foot strip to Southdown, Inc. on September 30, 1970. Thereafter on September 9, 1971, the same Southdown, Inc. transferred its interest in the property to Southdown Land Co. (one of the defendants herein).
(5) On November 24, 1971, Southdown Land Co. sold approximately 3 acres in the Northeast Quarter of the strip to Raymond D. Deperrodil. Subsequent to this sale the aforementioned actions took place giving rise to this suit. The same three acres was later sold to Robert L. Guidry on June 19, 1972, who was substituted as the other defendant in the present suit.
Plaintiff claims ownership of the 150 foot strip by virtue of essentially the following arguments:
(a) That even though the deed from the Garland heirs to the plaintiff specifically excludes the 150 foot strip, there is still privity of contract to allow tacking of the possession of their authors in title for prescription purposes by reason of the aforementioned cited provision in the deed transferring all "rights obtained by acquisitive prescriptive possession" to the "portions excepted as aforesaid from the tract herein conveyed."
(b) That the evidence establishes plaintiff's claims of prescriptive title based upon 10 and 30 years possession in itself and its author-predecessorsthe Garlands.
Defendants in turn argue that:
(a) Their ancestors in title were sold the land by Abrom Kaplan in 1900 prior to the sale of the same land back to the Garland sisters and that they have "made out their title" thereto.
(b) That the deed issued by the Garland heirs to the plaintiff is not translative of title since it specifically excludes the 150 foot strip and as a result there can be no privity of contract and no tacking.
(c) Plaintiff and its ancestors in title have never possessed the disputed strip as owners and instead consistently acknowledged the ownership and title of the defendants (and their predecessors) by excluding said section in numerous prior deeds, judgments, right of way agreements, etc. which interrupted prescription.

*604 (d) Alternatively, that pipe line rights of way granted by them or their predecessors interrupted prescription.
(e) Defendants have been in possession of the strip at least civilly following the corporeal possession by Acadia Vermilion Rice Irrigation Co. and that "possession of a part of the tract is possession of the whole."
(f) That plaintiff is estopped by deed and equitable estoppel from asserting title because the strip was specifically excluded in the deed and because the Garland sisters and heirs could not prescribe against their own warranty of good title.
The trial judge, in holding for the defendants, decided that they had "made out" a valid clear title, that plaintiff did not show record title, and finally that no juridical act was present which created an author-successor relationship between plaintiff and the Garland heirs, and therefore no privity of contract existed.
The evidence is clear to the effect that the defendants have record title to the disputed 150 foot strip through their predecessors in title back to the 1900 sale by Abrom Kaplan to Issac Lichenstein and Isadore Hechinger. Therefore the first issue to be considered is whether acquisitive prescription of 10 or 30 years has run in respect to the 150 foot strip (or a portion thereof) in favor of plaintiff's authors in title.
The 1901 deed from Abrom Kaplan to the Garland sisters is clear insofar as the description of the transferred property therein includes the Western 100 feet of the 150 foot strip.
Plaintiff alleges that this 100 foot strip was "exchanged" with Abrom Kaplan for the aforementioned northern 100 foot strip sold on the same day to the railroad. A perusal of the two deeds reveal that on the same date, the same amount of land was sold, for the same price ($272.70), by the same parties, and before the same notary and witnesses. This bolsters plaintiff's allegation. The plaintiff further argues that this 1901 deed is obviously translative of title to which 10 years of subsequent physical possession as owner are attached.
The first possession evidenced in the record comes from testimony of James Baker, a 73 year old retired farmer who lived across the Northwest corner of Section 13 all of his life. His testimony was to the effect that his father started farming approximately the Northern ½ of Section 13 around 1918. He stated that the Garlands, as owners, were paid 1/5 of the rice crop planted thereon as land rental by the tenants. Baker also testified that he himself started farming the section in 1927 and that the Northern ½ of the Section was farmed continuously thereafter by himself, his brother (Monroe Baker), or his son, up until 1968 when the Gayles acquired the Section. He stated that the land was cultivated to the East line up to the road right of way, and that a fence existed and was maintained there while the land was farmed. This testimony was corroborated by that of his brother, Monroe Baker.
Also testifying in deposition was David Merritt who stated he had been familiar with the "Garland farm" since 1925. It was his testimony that his father farmed the Southeast corner of the section as tenant for the Garlands from around 1929 or 1930, until 1943 when he himself started cultivating the same piece of land. He stated that the entire area, except for a portion of the Southeast corner comprised of about an 800 foot strip, (where vestiges of an irrigation canal remained) was cultivated by him until 1958. Thereafter, he stated that a certain Laysan Meaux and his family farmed the southeast corner until the Gayles bought the property. It was also testified to that there was a fence line running the entire length of the Section, North and South, some 15 feet from the *605 road ditch, and that he had maintained the fence during his many years of using the land.
The relevant articles of our Civil Code applicable to the 10 year prescription pleaded in this case are:
"Art. 3478. He who acquires an immovable in good faith and by just title prescribes for it in ten years ..."
"Art. 3479. To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
1. Good faith on the part of the possessor.
2. A title which shall be legal, and sufficient to transfer the property.
3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
4. And finally an object which may be acquired by prescription."
"Art. 3481. Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it."
"Art. 3483. To be able to acquire by the species of prescription mentioned in this paragraph, a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title."
"Art. 3487. To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:
1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporal possession.
2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription."
"Art. 3433. One may possess a thing not only by one's self, but also by other persons.
Thus the proprietor of a house or other tenement possesses by his tenant, or by his farmer; the minor, by his tutor; and, in general, every proprietor, by the persons who hold the thing in his name."
There is little dispute but that the 1901 deed by Kaplan to the Garland sisters is translative of title. In addition there is nothing in the record to indicate the sisters were in bad faith or thought they did not own the 100 foot strip transferred. The continuous, public and unequivocal possession of more than the 100 foot strip for greater than 10 years[2] (with the exception of the 737 by 56 foot strip in S E corner) is indicated in the uncontroverted testimony of the aforementioned tenant farmers. Nor is there anything in the record before 1942 to even suggest that said 10 year prescription was interrupted in any way or that the Garlands acknowledged the ownership of the defendant's predecessors to the 100 foot strip. Although it is admitted by plaintiff that the 150 foot strip was probably destined for irrigation canal purposes, it is argued that it was never used therefor with the exception of 56' by 737' in the Southeast corner. Instead, it is alleged that said land was abandoned and used by the tenant farmers of *606 the adjoining Garland landowners for farming and pasturing use. This allegation is supported in the record by testimony of the defendants' own witnesses. R. L. Wiggins, who worked for the Acadia-Vermilion Rice Irrigation Co. and later for Southdown for over 33 years testified that his job was to maintain and operate the canal systems owned by the respective companies. In regard to the 150 foot strip in question, he stated that in his time only the Southeast corner irrigating system was used and that such was not used for irrigation purposes but only because water from a canal to the East which was in operation had no other place to go. In fact there is no testimony that a canal system of any type was ever located north of the Southeast 56' by 737' canal lateral within the 150 foot strip.
Defendants also argue that Civil Code Arts. 3437, 3498, and 3502 are applicable and that by reason of their possession of the strip in the Southeast corner "that possession of a part is possession of the whole". This legal principle is firmly recognized in our jurisprudence but such is applicable only until the possessor is ousted by counter actual corporeal possession. See LSA-C.C. Art. 3449, Robertson v. Morgan, 116 So.2d 141 (La.App. 1st Cir. 1959). The plaintiffs have shown such to be the case on the part of the Garland sisters through their tenant farmers.
The only remaining obstacle to the 10-year prescription of the 100 foot strip is the argument raised by defendants that the Garland sisters could not prescribe against their own warranty of good title specified in their deed to Kaplan in 1899 of the 150 foot strip. The fact remains however that Kaplan sold this 100 foot of the 150 foot strip back to the Garlands. Therefore the estoppel by warranty argument in our opinion has no relevant application.
From the foregoing we are of the opinion that plaintiff has shown that the 100 foot strip (less the 737' by 56' section in the Southeast corner) was acquired by the Garland sisters via 10 year acquisitive prescription. Insofar as the lateral canal in the Southeast corner is concerned, plaintiff admits that vestiges remain and that water has been in the canal system. These works and their remains are in our opinion enough to preserve defendants' possession thereon. LSA-C.C. Art. 3502; Robertson v. Morgan, supra.
We next turn to the question of the remaining 50 foot stripthat is the easternmost 50 feet of Section 13 which runs North and South and lies adjacent to and West of the 30 foot strip granted for public use.
As aforementioned, there is evidence to the effect that plaintiff's ancestors in title occupied almost the whole of this 150 foot strip (including the 50 feet now in question) through their tenant farmers from at least 1918 to 1968. In the latter year plaintiff acquired the land and has occupied same until this suit was filed in 1972. There is, however, no deed translative of title as to this 50 foot strip. The 1901 deed only included the aforementioned 100 foot strip. Therefore the question before us is whether 30 years acquisitive presription is applicable to this easternmost 50 feet.
Defendants argue once again that prescription was interrupted in several respects.
It is first alleged that the plaintiff and its ancestors in title indicated their intention not to possess as owners by acts or conduct amounting to an acknowledgement of adverse title in defendants' predecessors. In our opinion the record bears out this contention.
The deed of March 7, 1942, whereby Mettie F. Garland acquired the whole of Section 13, excluded a 50 foot strip running along the East side. In addition a pipe line right of way agreement granted to Wisconsin Pipe Line Co. by Lee N. Garland on July 29, 1966, excludes a 50 foot strip along the entire East side of *607 Section 13 lying adjacent to and West of the public road.
This 50 foot strip, on the other hand, was granted in pipe line rights of way by Acadia Vermilion Rice Irrigation Co. on successive dates of October 8, 1942, June 5, 1965, and July 5, 1966.
Louisiana Civil Code Article 3520 provides:
"Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgement of the right of the person whose title they prescribed."
See also Foscue v. Mitchell, 190 La. 758, 182 So. 740 (1938); City of New Orleans v. Shakespear, 39 La.Ann. 1033, 3 So. 346 (1887); Snellings v. Lutz, 219 So.2d 781 (La.App. 2nd Cir. 1969); A. M. Edwards Co. v. Dunnington, 58 So.2d 225 (La.App. 1st Cir. 1952).
We conclude under the facts and circumstances herein plaintiff's ancestors in title did acknowledge ownership of the 50 foot strip in the defendant's predecessors and therefore prescription was interrupted at least by the aforementioned exclusion in the 1942 deed. Thirty years did not subsequently accrue before the last interruption occurred, i. e. recording of act of sale to R. D. Deperrodil on December 28, 1971, and his subsequent entry on the land by way of a survey on January 14, 1972. As a result plaintiff cannot claim that the easternmost 50 foot strip has been acquired by acquisition prescription.
The remaining question for consideration is whether plaintiff's deed is translative of title to the 100 feet even though it specifically excludes the entire 150 foot strip. The defendants argue that the inclusion in the deed of the proviso that the vendors conveyed their "rights obtained by acquisitive prescription possession" makes no difference since the 150 foot strip was excluded therein.
In Stutson v. McGee, 241 La. 646, 130 So.2d 403 (1961) the Supreme Court, although in dicta, referred to the case of Durel v. Tennison, 31 La.Ann. 538 (1879) as authority for the proposition that possession of contested property, adjoining lands specifically conveyed, could be tacked if certain provisions were included in a written transfer. In Durel the vendor transferred all of his rights in and to the contiguous property in the title in the following language:
"`That ever since the purchase of the afore-described property,' that conveyed by the act, `he has been in the peaceable possession and enjoyment of a certain portion of ground,' etc., giving a description of the property presently in question, `and he does hereby transfer and set over unto the said purchaser, his heirs and assigns, the rights and pretensions which he or his preceding vendors have or may have in and to the aforesaid portion of ground.'"
Herein the Garland heirs also transferred all rights acquired "by acquisitive prescriptive possession" to the portions excepted in the property description, which included the 150 foot strip in question.
In addition it must be remembered that the plaintiff's ancestors in title, the Garland sisters, acquired the 100 foot strip by 10 years acquisitive prescription by at least 1942. Thereafter, whether the strip was excluded in the property description in 1968 or the Judgment of Possession in 1942 is of no significance. The Garland heirs by operation of law inherited all of the rights and whatever interest in the property their ancestors had. See Hayward v. Noel, 225 So.2d 638 (La.App. 1st Cir. 1969), writ refused 254 La. 857, 227 So.2d 595. They can in turn convey their rights and interests therein.
For the above and foregoing reasons the judgment of the trial court is affirmed insofar as it recognized ownership of the easternmost 50 feet of the 150 foot strip in question in the defendants-plaintiffs in reconvention. The judgment granting title of the westernmost 100 feet of the 150 foot *608 strip to the same parties is however reversed and set aside and it is hereby ordered, adjudged, and decreed that plaintiff's plea of 10 years' prescription acquirendi causa be and it is hereby sustained; and accordingly the plaintiff, W. J. Gayle & Sons, Inc., is hereby recognized and decreed to be the owner of and, as such, entitled to the possession of the following described property, to-wit:
That certain 100 foot strip, lying and being situated 80 feet West of the East boundary line of Section 13, Township 12 South, Range 1 West, Vermilion Parish, Louisiana, running North and South, parallel to the East boundary line of the said Section 13, and more fully shown within the letters A, B, C, & D on the attached unscaled plat, less and except any portion of the 56 by 737 foot canal lateral which extends into the 100 foot strip referred to herein.
Costs at both trial and on appeal are hereby assessed equally between plaintiff-appellant and defendants-appellees.
Affirmed in part, reversed in part, and rendered.
NOTES
[1] On the same May 6, 1901, before the same notary and witnesses, the Garland sisters sold to Louisiana Western Railroad Co. a 100 foot strip on the Northern edge of Section 13, extending the entire length of the Section from East to West, lying immediately South of and adjoining a public road. The strip was sold for $272.70 and Abrom Kaplan acted as agent for the railroad.
[2] From 1918 until 1968 on the Northern ½ of the section and from 1929-30 until 1968 on the Southeastern ¼.