W. ELLIS BOND, Judge Pro Tem.
This is an appeal from a declaratory judgment adjudicating the ownership of a parcel of land under one of alleged dual chains of title emanating from a common ancestor in title.
The facts available to the court are not in dispute, having been submitted to the trial court in a joint written stipulation of facts along with copies of some documents of record. The stipulation, after tracking a chain of title of the affected property into the common ancestor in title, Ignace Frederick, states:
“2. Ignace Frederick mortgaged the following described property to the F.B. Collins Investment Company on February 28, 1920, which mortgage is recorded in Book 62, Page 489, under Entry Number 25025, to-wit:
170.475 acres lying and being situated in Section 2, Township 12 South, Range 3 East, Louisiana Meridian, and designated as follows: 80.00 acres being East Half of Southeast Quarter, 8.875 acres lying in Eastern portion of Northwest Quarter, of Southeast Quarter, and 96.00 arpents or 81.60 acres lying in the southern portion of Northeast Quarter, and designated as Lots 5 and 6 of Act of Partition had between heirs of Ursin Frederick, deceased, bearing number 20,040, record of conveyances of Vermilion Parish, Louisiana.
3. The aforementioned mortgage and note of F.B. Collins Investment Company was assigned to North American Life Insurance Company by instrument dated August 1,1921, and recorded in Mortgage Book 69, Page 4, under Entry Number 29222.
4. Ignace Frederick and J.U. Frederick executed a Cash Deed on January 12, 1925, to A. Kaplan conveying the following described property to construct a canal....
(a) A strip of land one hundred (100) feet wide running through our land, and extending fifty (50) feet on each side of a line described as follows: Beginning on the west boundary of our land in the Southeast Quarter of Section Two (2), Township Twelve (12) South, Range Three (3) East, at a point 270 feet South of the North boundary of the said Southeast Quarter and running S. 56-E, 1100 feet, thence South 30-30-E 470 feet, thence to the left on the arc of a circle of a radius of 500 feet a distance of 400 feet, thence East forty (40) feet to the Abbeville-Lafay-ette State Highway, on the East side of said Section Two, Tp. 12, S.R. Three East; containing 4.59 acres;
(b) Another strip of land fifty (50) feet wide off of the South side of our land in the Northeast Quarter of Section *450 Two (2), Township Twelve (12), South, Range Three (3) East, and running East adjoining and parallel to the South boundary of said Quarter Section a distance of 870 feet; containing 1.00 acre.
5. On July 28, 1927, by Sheriffs Sale, recorded in Volume 89, Page 242, under Entry Number 42968, Gilbert Le-Blanc purchased the identical tracts, described in Paragraph 1, and formerly owned by Ignace Frederick.
6. On May 21,1930, Gilbert LeBlanc, by cash deed recorded in Volume 105, Page 183, under Entry Number 48852, conveyed to John Nugier, all of the property which he purchased at the above described Sheriffs Sale.
7. The plaintiffs herein are the successors to John Nugier.
8. The defendant, Acadia Vermilion Irrigation Company, Inc., is the successor to A. Kaplan.
9. Acadia Vermilion Irrigation Company, Inc. and its predecessors, built and openly possessed, operated and continuously maintained as owners a canal for the purpose of irrigation on the above described strip of land since the cash deed was made to A. Kaplan, executed on January 12, 1925.
10. Acadia Vermilion Irrigation Company, Inc. and its predecessors executed right of ways and other legal acts involving this property.
11. Acadia Vermilion Irrigation Company, Inc. and its predecessors paid property taxes on the above described strip of land since the cash deed was executed to A. Kaplan on January 12, 1925.
12. The plaintiffs herein and their predecessors in title paid property taxes on the entire tract of land described in Paragraph 1 above since the Sheriffs Sale dated July 23, 1927.
13. In 1979, the Acadia Vermilion Irrigation Company, Inc. unilaterally ceased operating the canal and has abandoned and dismantled the entire canal system.
14.Jessie James Bergeron and Akemi Bergeron purchased the above described strip of land from the Acadia Vermilion Irrigation Company, Inc. by deed dated December 2, 1981, and recorded in Volume 986, Page 817, under Entry Number 81-8986, and said defendants have been in possession of said properties as owners since date.”
Plaintiffs allege they are the record title owners of the strip of land formerly used for an irrigation canal. Defendants urge that they are the owners of the same property and allege they have constructed substantial improvements thereon since their purchase of it in 1981. The contentions of the parties center upon the wording of the conveyance document referred to in Paragraph 4 of the stipulation. Defendants contend it is a warranty deed conveying an ownership interest in the strip of land, hereinafter referred to as the Kaplan strip, while plaintiffs contend it conveys only a servitude for an irrigation canal. The trial court aptly referred to the document as confusing, a description with which we con-cui;. However, for reasons hereafter set forth, we find it unnecessary to make a finding as to its efficacy.
At the time of the conveyance regarding the Kaplan strip in 1925, the entirety of the Frederick property was burdened with a mortgage granted by him 1920. It contained the “pact de non alienondo” wherein the mortgagor bound himself not to sell, alienate, deteriorate or encumber the property to the prejudice of the act. The conveyance to Kaplan was in contravention of that declaration.
The mortgage was foreclosed upon in 1927. The sheriffs deed of sale of the entirety of the property began the chain of title through to plaintiffs’ ancestor in title. The deed recites that the sheriff sold the property under a writ of seizure issued at the instance of the mortgagee-assignee. The fact that the writ was one of seizure as distinguished from a writ of fieri facias, demonstrates that the foreclosure was by executory process rather than by ordinary process.
*451 Under the provisions of the Louisiana Code of Practice in effect at that time, and until 1960, the privileged lien holder could proceed to enforce the' privilege against the original mortgagor by executory process without making a third party possessor a party to the action. A sheriff’s deed of sale of the entirety of the mortgaged property divested a third party possessor of whatever interest he may have acquired therein subject to the mortgage contrary to the “pact de non aliendo.” See present LSA-C.C.P. articles 2701 et seq. and 3741 et seq., and the sources cited thereunder. See also 21 Tulane Law Review 238 and 32 Tulane Law Review 555 for historical development of executory process.
The foreclosure and sale of the Frederick property divested Kaplan and his successors of whatever interest had been granted subsequent to the mortgage, be it an ownership interest or a servitude. There is nothing in the record to suggest that the sheriffs sale purchaser, LeBlanc, his vendee, Nugier, or his successors, down to and including present plaintiffs, ever interfered with the possession of the Kap-lan strip or operation of the canal down through the years.
Defendants urge that they have acquired ownership of the Kaplan strip through acquisitive prescription of 10 and 30 years. The trial court found that they had acquired only a servitude for the operation of a canal by prescription, citing LSA-C.C. art. 742, which provides:
“The laws governing acquisitive prescription of immovable property apply to apparent servitudes. An apparent servitude may be acquired by peaceable and uninterrupted possession of the right for ten years in good faith and by just title; it may also be acquired by uninterrupted possession for thirty years without title or good faith.”
The evidence of record concerning possession of the Kaplan strip is contained in Paragraph 9 of the stipulation, wherein the parties agreed that:
“Acadia Vermilion Irrigation Company, Inc. and its predecessors, built and openly possessed, operated and continuously maintained as owners a canal for the purpose of irrigation on the above described strip of land since the cash deed was made to A. Kaplan, executed on January 12, 1925.”
The portion of the stipulation contained in Paragraph 10 deals with matters which lead to a conclusion that the successors of Kaplan treated with the property as owners and were treated as owners by others in the purchase and sale of other rights of way across and along the property. The record demonstrates conveyances of rights of way by them to United Gas Corporation for $300.00 in 1965; to Southern Bell Telephone and Telegraph Company for $200.00 in 1964; and, to the State of Louisiana, Department of Highways, for the consideration of mutual benefits in 1963.
One may acquire the ownership of real property by continuous uninterrupted, peaceable, public and unequivocal possession, under color of valid title for a period of ten (10) years. The relevant articles of our Civil Code applicable to the 10 year prescription here pleaded are:
“Art. 3478. He who acquires an immovable in good faith and by just title prescribes for it in ten years.
Art. 3479. To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
1. Good faith on the part of the possessor.
2. A title which shall be legal, and sufficient to transfer the property.
3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
4. And finally an object which may be acquired by prescription.
Art. 3481. Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it.
*452 Art. 3483. To be able to acquire by the species of prescription mentioned in this paragraph, a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title.
Art. 3487. To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:
1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporal possession.
2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title cannot be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription.”
The record does not show any possession of the disputed tract by plaintiffs or their ancestors in title since 1927. There is a stipulation that they paid taxes on the entirety of the property, including the Kaplan strip since 1927 which might, in the absence of adverse possession, be considered possession sufficient to acquire title by 10 years acquisitive possession. It would not be sufficient to demonstrate an interruption of or interference with possession by an actual possessor openly and actively using the property for the purpose acquired under color of just title, especially where the possessor was, as here, also paying taxes on the same property.
The finding by the trial court that Kaplan’s successors in title had acquired a servitude by acquisitive prescription of 10 years was likely the result of having determined that the Frederick-Kaplan document was a conveyance of a servitude. However, the record demonstrates that Hunter Canal Company, who purchased the strip from Kaplan in 1925, and who was the third party possessor at the time of the sheriff’s sale in 1927, conveyed the same strip to Acadia-Vermilion Rice in 1943. Successive conveyances under color of title succeeded through 10 other entities through the years, culminating in the purchase by defendant in 1981.
We have previously ruled that vestiges of the works of an irrigation canal are enough to preserve possession sufficient to support acquisitive prescription of 10 years. W.J. Gayle & Sons, Inc. v. Deperrodil, 300 So.2d 599 (La.App. 3rd Cir.1974, writ refused 303 So.2d 186 (La.1974). We hold that defendants are owners of the subject strip by acquisitive prescription of ten (10) years, commencing with stipulated possession beginning at the time of the sale to Acadia-Vermilion Rice in 1943.
We are unable to render a proper judgment because of discrepancies in the record. The descriptions of the disputed tract of land recited in the stipulation and in the judgment are not in accord and those descriptions vary from those in plaintiff's original and amending petitions. Accordingly, we remand to the trial court with instructions to reopen the case for the limited purpose of making a determination of a Correct description of subject property, and then to render judgment in accordance with the views herein expressed.
Costs at trial and on appeal are hereby assessed equally between the defendants-appellants and plaintiffs-appellees.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.