603 So.2d 250 (1992)
Holyne NEWMAN, L. Barbee Ponder, Jr., et al.
v.
The LIVINGSTON PARISH POLICE JURY and Amoco Production Company.
No. 91 CA 1103.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
*251 J. Lynn Ponder, Amite, for plaintiff-appellant.
Wayne Ray Chutz, Port Vincent, for defendant-appellee Livingston Parish Police Jury.
Millard Matthew, Jr., Houston, Tex., for defendant-appellee Amoco.
Before LOTTINGER, EDWARDS and GONZALES, JJ.
LOTTINGER, Judge.
In this action for declaratory judgment, plaintiffs seek to be declared the rightful owners of certain land, totaling 10.919 acres, that was allegedly dedicated by a previous owner to Livingston Parish. From a ruling in favor of Livingston Parish Police Jury on opposing motions for summary judgment, the plaintiffs appeal.

FACTS
This case is in the nature of a concursus proceeding. At issue is the ownership and ultimately the right to royalties produced from 10.919 acres which comprise the streets and roads with reference to a subdivision plat known as Meadowwood Park. As owners of the entire 62.81 acre tract with certain noted exceptions, plaintiffs, Holyne J. Newman and L.B. Ponder, Jr., contend that the land referenced as streets in the Meadowwood Park Subdivision plat was never released of a previously recorded mortgage and vendor's privilege. Thus, the plaintiffs contend that the 10.919 acres were purchased by their predecessor owner, Mrs. E.L. Ponder, at the sheriff's sale that took place on September 5, 1962. Livingston Parish purports to have derived its ownership of such land as a result of a statutory dedication made by Diamond Development Corporation (Diamond Development).
The plaintiffs brought suit for declaratory judgment against Livingston Parish and Amoco Production Company (Amoco) seeking to be declared the owners of the 10.919 acres and the rightful recipients of the royalties produced from such land. Amoco does not dispute the fact that royalties are owed. In fact, it has deposited the royalties in the registry of the court.
The plaintiffs filed a joint stipulation of facts. Rather than signing the joint stipulation filed by the plaintiffs, Amoco filed a separate proposal which was subsequently adopted by Livingston Parish. The plaintiffs filed opposition and traversal of Amoco's proposal to the extent that Amoco's stipulations were in opposition to the their original mineral lease to Amoco on the *252 entire 62.81 acres. The plaintiffs also object to any stipulation which sought to alter, vary, or contradict the credit act of sale with vendor's lien from Lamar Cockerham to Henry H. Starns.
After reviewing the record, this court finds that the following facts are not in dispute. On May 22, 1958, Lamar Cockerham executed a Sale with Mortgage to Henry H. Starns transferring ownership of a 62.81 acre tract which includes the 10.919 acres in question. This sale was recorded May 26, 1958. At the time of the sale, Mr. Cockerham recognized that Mr. Starns was purchasing this tract to subdivide the property "into building[s] lots or homesites, by and through an engineer, set apart certain parts of said land for street purposes." The parties specifically provided that upon sale of an individual lot and upon payment of a certain portion of the sale price to Mr. Cockerham, the lot would be released from the mortgage on the entire tract. The sale made no provision for the release of land that was to be used as streets.
On August 11, 1958, Henry H. Starns subsequently sold this property to Diamond Development by executing a Credit Sale with Assumption of Mortgage. This sale was recorded on August 20, 1958.
Between August 11, 1958 and September 5, 1958, Diamond Development made cash sales of several of the subdivided lots. These sales identified lots in reference to a preliminary plan of Meadowwood Park Subdivision dated January 1958. Diamond Development sold the remainder of this tract with an assumption of mortgage to Henry H. Starns and Raymond H. Starns on May 14, 1959.
Beginning on May 29, 1959, Henry H. Starns and Raymond H. Starns made cash sales of some of the remaining subdivided lots. These sales identified lots in reference to a plan of Meadowwood Park Subdivision dated December 1, 1958.
A preliminary plan of Meadowwood Park Subdivision dated January, 1958, was recorded on October 29, 1959. The recorder of this plan is unknown. The dedication and certification clauses on the plan were unsigned. Furthermore, there is no certificate of the Parish Surveyor as to the correctness of the map.
After Henry H. Starns and Raymond H. Starns were adjudicated bankrupt, Lamar Cockerham instituted proceedings to execute on his May 22, 1958 mortgage and vendor's privilege on the property sold to Henry H. Starns. The entire tract, less and except specifically enumerated lots which had been released of the mortgage when sold as individual lots, was seized and sold to Mrs. E.L. Ponder at a sheriff's sale on September 5, 1962.
The entire 62.81 acres remains undeveloped. Street have never been laid out or used. The plaintiffs are presently co-owners of the tract of land that was acquired by Mrs. E.L. Ponder at the sheriff's sale.
Mineral leases were executed by the plaintiffs and Livingston Parish which conceivably cover the parcels of land in question.

FINDINGS OF THE TRIAL COURT
The trial court rendered judgment in favor of Livingston Parish declaring that the filing of the said plat on October 29, 1959, was in substantial compliance with La.R.S. 33:5051 so as to constitute a statutory dedication of the 10.919 acres thereby entitling Livingston Parish to the mineral royalties.

ASSIGNMENTS OF ERROR
The plaintiffs contend that the trial judge erred in (1) failing to adhere to the law between the parties as set forth in terms of their mineral lease with Amoco, (2) finding that a there was substantial compliance with La.R.S. 33:5051 so as to result in a statutory dedication of certain land that was subject to a previously recorded sale with mortgage, (3) failing to find that the dedication simply resulted in a servitude rather than in a transfer of ownership, and (4) failing to find that the dedication amounted to a taking of the plaintiffs' property without due process of law.

DISCUSSION
The trial judge's reasons for judgment focus on the issue of whether the actions *253 taken by Diamond Development were sufficient to constitute a statutory dedication so as to vest ownership of the 10.919 acres in Livingston Parish. The plaintiffs contend that the trial judge ignored the fact that a valid mortgage and vendor's privilege existed on this property at the time such property was allegedly dedicated to Livingston Parish. Therefore, we must determine whether a transfer of ownership can affect a previously recorded mortgage and vendor's privilege.
A mortgage is a right granted to a creditor over property of a debtor for the security of the debt, and gives the creditor the power of having the property seized and sold in default of payment of the debt. La.Civil Code art. 3278. Mr. Cockerham's mortgage became effective as to third parties, including Livingston Parish, from the moment of recordation, May 26, 1958. La.Civil Code arts. 3329 and 3342. Any subsequent transfer of property that is burdened by a recorded mortgage does not relieve the property of the mortgage. The mortgage remains on the property until it expires or is extinguished. La.Civil Code art. 3411; see also, La.Civil Code art. 3369. Mr. Cockerham, as mortgagee or privilege holder, clearly had the right to follow the property into the hands of the third party owners, Henry H. Starns, Raymond H. Starns, and Livingston Parish. La.Civil Code art. 3399.
The plaintiffs are currently the co-owners of that land acquired by Mrs. E.L. Ponder at the September 5, 1962 sheriff's sale. In his suit to execute on the May 22, 1958 mortgage and vendor's privilege, Mr. Cockerham seized the entire 62.81 acre tract that had been sold to Henry H. Starns excepting only those individual lots that had been specifically released from the mortgage. The act of sale creating the mortgage in favor of Mr. Cockerham specifically provided for the release of individual lots at the time of sale. In this act of sale, Mr. Cockerham recognized that the property would be subdivided by the purchaser thereby requiring that portions of the property be used for streets.
Livingston Parish argues that the language in the act of sale pertaining to the use of land for streets evidences Mr. Cockerham's consent to the subsequent statutory dedication. The act of sale did not specifically provide for the release of that portion of the property that was to be used for streets. We find that the simple references made as to the use of portions of land for streets were insufficient to constitute a release of mortgage on that land subsequently designed for streets in a subdivision plan.
Diamond Development assumed the mortgage on the 62.81 acre tract when it purchased the property from Henry H. Starns. Thereafter, Diamond Development allegedly transferred ownership of a portion of the 62.81 acre tract to Livingston Parish by way of a statutory dedication. Livingston Parish could not acquire greater rights in the property than that held by Diamond Development. The alleged statutory dedication to Livingston Parish took place at the time the plat was recorded, October 29, 1959. The record clearly reveals that the mortgage was recorded prior to the alleged dedication. In the event that Diamond Development's actions resulted in a statutory dedication thereby vesting ownership in Livingston Parish, we find that the dedication of the land was made subject to the previously recorded mortgage. Additionally, we find that the vendor's privilege arising in favor of Mr. Cockerham from the original sale to Henry H. Starns was enforceable at the time of the sheriff's sale. Cormier v. Castille, 488 So.2d 247, 248 (La.App.3rd Cir.1986).
All of the property that remained still subject to the mortgage and vendor's privilege was seized by Mr. Cockerham on July 17, 1962. Since the 10.919 acres in question were never released from the mortgage and vendor's privilege on the entire tract, it was seized by Mr. Cockerham along with the land owned by Henry H. Starns and Raymond H. Starns. In other words, the foreclosure and sale of the 62.81 acre tract with certain exceptions divested Livingston Parish of the alleged ownership interest granted to it by Diamond Development *254 after the mortgage had been properly recorded. Montagne v. Bergeron, 488 So.2d 448, 451 (La.App.3rd Cir.), writ denied, 492 So.2d 1218 (La.1986). Accordingly, we find that the 10.919 acres in question were purchased by Mrs. E.L. Ponder at the September 5, 1962 sheriff's sale and currently belong to the plaintiffs. Pursuant to the lease on the entire 62.81 acres of land to Amoco Production Company, the plaintiffs are entitled to the royalties on the 10.919 acres in question.
On the other hand, if Diamond Development's actions amounted to an implied dedication, ownership would not have vested in Livingston Parish. Becnel v. Citrus Lands of Louisiana, Inc., 429 So.2d 459, 461 (La.App.4th Cir.), writ denied, 437 So.2d 1147 (La.1983). Therefore, the plaintiffs would be the owners of the 10.919 acres in question and would be entitled to the royalties from such land under their lease with Amoco.
Therefore, for the above and foregoing reasons the judgment of the trial court is reversed, and IT IS NOW ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of the plaintiffs on the opposing motions for summary judgment declaring them to be the owners of the 10.919 acres in question and awarding them the royalties produced from such land as governed by their lease with Amoco. All costs of this appeal in the amount of $383.50 are assessed to Livingston Parish.
REVERSED AND RENDERED.
EDWARDS, J., concurs and assigns reasons.
EDWARDS, Judge, concurring.
I respectfully concur. The record reveals that there was not substantial compliance with LSA-R.S. 33:5051, and therefore, there was no statutory dedication of the property in dispute. Furthermore, even if the record reveals that there was an implied dedication, which issue we do not reach, the most Livingston Parish would acquire thereby is a servitude over the land, noninclusive of mineral rights. For these reasons, the plaintiffs are the rightful owners of the royalties in dispute.