322 So.2d 880 (1975)
WILLIAM T. BURTON INDUSTRIES, INC., Plaintiff and Appellant,
v.
Ivey COOK, Defendant and Appellee.
No. 5181.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1975.
Rehearing Denied December 17, 1975.
Writ Refused February 6, 1976.
Camp, Carmouche, Palmer, Carwile & Barsh by Karl E. Boellert, Lake Charles, for plaintiff and appellant.
*881 Teekell & Chaudoir by Lloyd G. Teekell, Alexandria, for defendant and appellee.
Before CULPEPPER, DOMENGEAUX and PAVY, JJ.
CULPEPPER, Judge.
This is a petitory action. The plaintiff, William T. Burton Industries, Inc., claims ownership of a 40-acre tract of land by recorded title. The defendants in possession are Ivey Cook and his four children, who have a recorded title to the land adjoining the 40 acres on the west, and who claim 4.69 acres off of the west side of plaintiff's 40 acres by the acquisitive prescription of 30 years. Defendants filed an answer and a reconventional demand praying for recognition of their ownership of the 4.69 acres in dispute. The district court rendered judgment dismissing plaintiff's suit and recognizing defendants as owners of the 4.69 acres. Plaintiff appealed. We affirm.
The substantial issue is whether the defendant Cook corporeally possessed as owner for 30 years the 4.69 acres in dispute, which he enclosed as part of his farm in 1924 or 1925 by rebuilding an old bowshaped fence which encroaches on the 40 acres of which plaintiff claims ownership by recorded title. Plaintiff contends the mere erection and maintenance of the fence down to the present date is not sufficient, in the absence of cultivation, timber cutting or other acts of corporeal possession of every square foot of the disputed land.
The record shows that in 1922 defendant Cook purchased from Harvey Duck an 80-acre farm adjoining on the west the 40-acre tract claimed by the plaintiff Burton. Mr. Cook and his wife moved onto the farm in 1924. Shortly thereafter, Cook rebuilt with wire an old bow-shaped wooden fence which Duck had erected so as to include within his fenced field the 4.69 acres off of the adjoining tract of land which is now claimed by Burton.
At the time of the trial in 1975, Cook was 79 years of age and still lived on this farm. He testified that beginning in about 1925 he cultivated most of the 80 acres which he purchased from Duck. As to the 4.69 acres in dispute, he says he cultivated at least one-fourth of an acre lying south of Cheney Creek, which traverses the southern portion. Although Cook admitted that he never cultivated that portion of the 4.69 acres north of the Creek, he says he did use it for pasture for his horses, cattle and hogs. He testified he continued his farming operations until 1965 or 1967. Since that time, he has used the property in dispute for pasture.
Cook admitted that he never cultivated all of the 4.69 acres, nor did he cut the timber on it. But Cook and two of his neighbors testified positively that, beginning in 1924 or 1925, Cook maintained around his home and cultivated field and including the 4.69 acres in dispute, a good fence sufficient to protect this own farm from the livestock of others in this "open range" area, and also sufficient to maintain Cook's own livestock within his fence. It was stipulated that three other witnesses for defendant would have testified to the same facts if placed on the stand. Plaintiff called no witnesses. So the testimony of defendant and his witnesses is uncontradicted.
LSA-C.C. Article 3499 provides "The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith." The next three articles describe the nature of the possession necessary. Article 3500 provides "The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner." Article 3501 provides "The possession necessary for this species of prescription, when it is commenced by the corporeal possession of the thing, may, if it has not been interrupted, be preserved by external and public signs, announcing the possessor's intention to preserve the *882 possession of the thing, as the keeping up of roads and levees, the payment of taxes, and other similar acts." Article 3502 states: "A man may even retain the civil possession of an estate, sufficient to prescribe, so long as there remain on it any vestiges of works erected by him, as, for example, the ruins of a house." Article 3503 provides: "How favorable soever prescription may be, it shall be restricted within just limits. Thus, in the prescription of thirty years, which is acquired without title, it extends only to that which has been actually possessed by the person pleading it."
The particular acts which constitute sufficient possession for acquisition by acquisitive prescription of 30 years vary with the circumstances of the individual case. Bagby v. Clause, La.App., 251 So.2d 172 (1st Cir. 1971). The nature of the land involved is the chief consideration as to what acts of possession are sufficient. Clayton v. Langston, La.App., 311 So.2d 74 (3rd Cir. 1975); Martin v. Howell, La.App., 280 So.2d 358 (1st Cir. 1973); Valvoline Oil Company v. Corcordia Parish School Board, La.App., 216 So.2d 702 (3rd Cir. 1968); King v. Board of Commissioners for Atchafalaya Basin Levee District, La.App., 148 So.2d 138 (3rd Cir. 1962); ABA Exploration Gas & Oil Company v. A. Wilbert Sons Lumber & Shingle Company, La.App., 170 So.2d 752 (1st Cir. 1965).
The land involved in the present suit is rural and is best suited for agriculture or growing timber. There is no question that the acts of possession by Cook constituted corporeal possession of this type of land.
In the landmark case of Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952) the issue was whether the plaintiff had the requisite possession to bring the possessory action. After stating that the nature of the possession required for the possessory action is the same as that for the acquisitive prescription of 30 years, the court then discussed the required possession with particular reference to the nature and effect of enclosures. The court stated:
"We recognize also that under the jurisprudence a person claiming by possession alone and without title is required to show an adverse possession by enclosures, and that his claim will not extend beyond such enclosures. But, when this jurisprudence is considered with the articles of the Code announcing the law applicable to such cases, we do not think that a strict interpretation should be given to the word `enclosures'.
" We are supported in this view by the interpretation given by this court in the case of Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648, 651, to the word `boundaries' as used in Article 3437 of the Civil Code dealing with possession. That article provides: `It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries.' In that case this court said that ` * * * The word "boundaries," in that article, means the limits or marks of inclosure if the possession be without title, or the boundaries or limits stated in the title deed if the possession be under a title. * * *' (Italics ours.)
* * * * * *
"What the court means by `enclosures', as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof."
*883 Other cases which have applied to 30 years acquisitive prescription the rule of Article 3437 that corporeal possession of a part constitutes corporeal possession of the whole of the land within enclosures are Gantlet v. Lawes, La.App., 197 So.2d 723 (1st Cir. 1967); Robertson v. Morgan, La.App., 116 So.2d 141 (1st Cir. 1959); Long v. Chailan, 196 La. 380, 199 So. 222 (1940); Continental Land & Fur Company v. Lacoste, 192 La. 561, 188 So. 700 (1939); Peters v. Crawford, La.App., 185 So. 716 (2d Cir. 1939); Winn v. Calhoun, La.App., 94 So.2d 545 (2d Cir. 1957), and Labarre v. Rateau, 210 La. 34, 26 So.2d 279 (1946).
Applying these rules to the facts of the present case, it is clear that the fence rebuilt by Cook in 1924 or 1925 was a sufficient "enclosure" to give definite notice to the public and to all the world of the extent of Cook's possession. Anyone who saw this fence which enclosed Cook's home and his farm and included the 4.69 acres in question, was put on notice that Cook intended to possess as owner all of the land within the fence. Under LSA-C.C. Article 3437, it was not necessary for Cook to "pass over" every part of the enclosed farm to exercise corporeal possession over it. It was sufficient that he lived upon and cultivated only a part of the land with the intention of possessing all included within the fence. The evidence, as outlined above, shows that beginning as early as about 1925 Cook farmed part of the 80 acres and even cultivated about¼th of an acre of the 4.69-acre tract in dispute until 1965 or 1967, a period of over 40 years. After he stopped farming, Cook continued to maintain the fence and to live upon and use the property for pasture down to the time this case was tried in 1975. Clearly, Cook proved his ownership by the acquisitive prescription of 30 years.
Plaintiff argues that while Article 3437 provides that a person may take possession of an estate without passing over every part of it, this provision must yield to Article 3503, which restricts prescription to what "has been actually possessed by the person pleading it." Plaintiff contends that in the present case it was necessary that Cook prove that he actually possessed every square foot of the 4.69 acres by cultivating it or by cutting timber or by other such acts of corporeal possession "foot by foot." With this contention we cannot agree. Article 3503 is in Chapter 3 of our Civil Code entitled "Of Prescription". Article 3437 is found in Chapter 2 of the Code entitled "Of Possession". Article 3437 is not in conflict with Article 3503. The two articles must be read together, as explained in the above quotation from Hill v. Richey. The word "boundaries" in Article 3437 means enclosure, and if the possession be without title, as under Article 3503, corporeal possession of part constitutes corporeal possession of all the land within the enclosure.
For the reasons assigned, the judgment appealed is affirmed at appellant's cost.
Affirmed.