347 So.2d 859 (1977)
Grover C. WAGLEY, Plaintiff-Appellant,
v.
Samuel CROSS, Defendant-Appellee.
No. 5932.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1977.
*860 William R. Boone of Edwards & Boone, Many, for plaintiff-appellant.
Davis & Simmons by Kenneth N. Simmons, Many, for defendant-appellee.
Before HOOD, CULPEPPER and STOKER, JJ.
STOKER, Judge.
The question to be determined in this appeal is the correctness of the findings and judgment of the trial court in a possessory action. A portion of a residential lot in Many, Louisiana, is involved. Actually each party to this action has asserted a possessory action in his own behalf.[1] Judgment *861 was rendered in favor of Samuel Cross and against Grover C. Wagley maintaining Cross in the possession of the property to be described below and ordering Wagley to assert whatever claims he has to the ownership of the property within sixty days from the date the judgment becomes executory on pain of being precluded thereafter from asserting such a claim. The judgment recognizing and maintaining Samuel Cross in possession was made subject to a preliminary injunction granted by the trial court on November 13, 1975. Grover C. Wagley's demand to be recognized as possessor and maintained in possession was rejected. Plaintiff-appellant, Grover C. Wagley, appealed and defendant-appellee, Samuel Cross, has answered the appeal.
After trial the trial court found in favor of Samuel Cross, defendant and reconvenor, without giving written reasons, and his oral reasons are not recorded. The evidence is sufficient to support the finding of the trial court that Samuel Cross was entitled to have his possession recognized and maintained. We affirm his action.
As stated, this litigation presents a possessory action by both parties. However, they do not claim the same tract or fractional lot of land, but what each claims overlaps substantially what the other claims. Wagley's claim to possession rests entirely on civil possession, the recordation of a deed. The claim to possession by Cross rests entirely on corporeal possession. The land in question lies in a subdivision for which there is a recorded plat in evidence as plaintiff's Exhibit 4 (Tr. 5) known as Florien Giaque's Second Addition to Many, Sabine Parish, Louisiana.
The judgment in favor of Cross recognizes and maintains him in possession of the following:
Beginning at a point 195 feet North of the Southeast Corner of Lot Number 232 of Florien Giaque's Second Addition to the Town of Many, Louisiana, run thence West a distance of 55.0 feet to a point on an old fence row; run thence South along the said fence row a distance of 55.0 feet to the old Fisher-Many Public Road; run thence Southeasterly along the old Fisher-Many Public Road a distance of 70 feet to a point; run thence North a distance of 82.0 feet to the point of beginning.
The father of Samuel Cross moved to property to the immediate east of the above property in about 1920. Although no petitory action is involved, the evidence on behalf of Cross showed that the Cross family had possessed the above described property at various times since 1920 if it was not possessed continuously since that time. Samuel Cross ultimately acquired his father's property and for the last twelve years prior to the survey commenced by Wagley had mowed the grass on the above described property every two weeks. Pictures in evidence show a well mowed side yard area bearing all the appearances of having been frequently mowed and maintained as a residential type yard adjacent to a residence. Admittedly this periodic mowing is the only possession exercised by Cross in the period of one year prior to his disturbance by the survey activity of Mr. Leone acting for Mr. Wagley. Upon discovery of Leone performing the survey work and setting stakes, Cross ordered him to leave the property and desist from his work. Leone complied.
There was little or no evidence to establish any physical or corporeal possession by Wagley himself or through his lessee of any of the property specifically in dispute. The *862 trial court evidently resolved this issue against Wagley, and the record does not establish that he committed manifest error. There is no proof that Wagley's ancestors in title ever exercised corporeal possession of the disputed lot so as to support a claim to possession under Article 3660 of the Louisiana Code of Civil Procedure. The sole basis for Wagley's claim of possession is the recording of deeds, or a deed, which include the disputed property and possession of a portion of the property described but located outside of the limits of the disputed property.
The possession of Cross is admittedly not buttressed by any title and therefore is based solely on the kind of possession necessary to support acquisitive prescription through thirty years of adverse possession. The trial court evidently resolved the issue in favor of Cross and we cannot say this resolution was manifest error.
The issues in this appeal were exceptionally well briefed and orally argued. Although counsel have been quite persuasive on numerous issues, we will endeavor to dispose of these issues as briefly as possible and see no need to treat in detail the evidence adduced on both sides. We regard the most serious issues presented to be the question of whether the acts of mowing grass by Samuel Cross constituted possession and whether or not he possessed within enclosures. We will proceed to consider the significant issues as we see them.[2]

POSSESSION BY CROSS WITHIN ENCLOSURES
The record indicates that at some time in the course of the litigation the trial judge viewed the property Cross claims he has possessed. Cross introduced in evidence twelve large color photographs taken from numerous points depicting the property from various directions and vistas. The pictures and evidence disclose the following concerning the property of which Cross was recognized and maintained as possessor.
1. The east side (82') merges into the property belonging to Samuel Cross now and which has belonged to the Cross family for many years prior to the acquisition of it by defendant-appellee, Samuel Cross.
2. The north line (55') is marked and bordered by an existing fence. (Nothing north of this line is in dispute.)
3. The west side (55') is marked by what is claimed by Cross to be a hedgerow, or remnant of a fence row. Wagley denies it is such.
4. The south side (70') lies along the old Fisher-Many Public Road which appears to have some identifiable ground feature such as a lower elevation and is bordered with a number of large oak trees planted by Samuel Cross' father.
The east and north lines have clearly visible enclosures. The Cross residence is just beyond the east line and the property on which the residence is located merges into the disputed property. The fence existing on the north side runs east and west and corners with an existing fence running north from the corner. Plaintiff-appellant's surveyor testified that if the latter fence were extended south it would coincide with what Cross contends is the west line. Considerable evidence supports the conclusion that a fence did exist once on the west line and that at this time there is a rise in elevation of approximately six inches along the west line. The surveyor testified this was characteristic of old fence lines or fence rows. However, during the period of this litigation there was no fence and there probably has been no fence along this line for thirty years or more. At the time of trial, and as depicted in the pictures D-1 through D-12, the "fence row" appears at a distance as an unmowed strip of weeds approximately *863 three feet in width along the west side of the disputed property. West of the west line is residential property (formerly the Medlock home) and the grass on that plot appears to have been well kept and regularly mowed up to a strip of weeds marking the west line.
The photographer who took the several photographs for Cross testified that there was a perceptible rise in the ground along the old fence line on the west side. He stated that there was a difference in elevation between the property on the east side of the line (property in dispute) and that on the west side (Medlock property), and the difference was approximately six inches. (Tr. 91,100 and 101).
There is no doubt that a fence once existed along the western boundary of the property claimed by Cross. The testimony of Cross and his brother established that the fence once enclosed a garden kept by their father. This testimony was corroborated by the testimony of Rev. Recie Medlock, a member of the Sabine Parish School Board. The property to the west of the fence row had belonged to his uncle, Herbert Medlock, until two years prior to the suit. He had known Samuel Cross and his family for forty years and knew the Cross family.
Rev. Medlock remembered the fence and the garden kept by Ray Cross, father of Samuel Cross. He related that as a boy, he and companions were accustomed to raiding the elder Cross' watermelon patch in his garden on the east side of the fence by slipping through the fence. He stated the fence was in existence up until 1942 or 1943, but was gone when he returned from the Army in 1950. He was familiar with the fact that Samuel Cross had mowed the grass on the east side of the old fence to the fence row up until approximately eight months prior to trial. He identified the place of location of the fence as the line of weeds shown on the photographs introduced by Cross. He testified that Medlock relatives still occupy or maintain the Herbert Medlock property and one of them periodically mows the grass up to the old fence line on the Medlock side of it. The Medlocks have always mowed up to the fence row and stopped there. He never heard of anyone disputing Cross' possession of the property in question until the dispute between the plaintiff and defendant arose.
Rev. Medlock was also familiar with the old Fisher-Many public road. Other general testimony concerning this road indicates that it had been abandoned when U.S. Highway 171 was realigned through Many. However, it remained as an identifiable land feature bordered by large trees planted by the father of Samuel Cross. This roadway marks the southern boundary of which Samuel Cross claims the possession.
The northern boundary actually has an existing fence along it and the eastern portion of the property merges into the property occupied by the Cross home of which Samuel Cross is owner. Adjacent to the Cross house is a chain link fence running north and south. If it does not mark the eastern boundary of the property in dispute, it runs parallel with it.
We are convinced that the four boundaries of the property in dispute are sufficiently evident to give Grover Wagley notice of the limits of the continuing possession of Samuel Cross. Several other witnesses gave impressive testimony in support of the claims of Cross.
We see no need to burden this opinion with a discussion of legal principles or discussion of cases. What is required to conform to the requirements of law in possessing within enclosures has been extensively discussed recently by this and other appellate courts and the Louisiana Supreme Court. Norton v. Addie, 337 So.2d 432 (La. 1976); Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975); Dunn v. Pipes, 325 So.2d 349 (La.App. 2d Cir. 1976) and William T. Burton Industries, Inc. v. Cook, 322 So.2d 880 (La.App. 3rd Cir. 1975).
In William T. Burton Industries, Inc. v. Cook, supra, this court cited the landmark case of Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952). Extensive quotation from this case was set forth in connection with the nature and effect of enclosures. We hold *864 that the boundaries established by the evidence produced by Samuel Cross in this case meet the standards set forth in the Richey case and those cited above.[3]

ACTS OF POSSESSION BY CROSS
Although the only acts of possession exercised by Cross consist of his mowing the area in question, this is sufficient. The Louisiana Supreme Court observed in the Liner case that the concept of possession is neither simple nor precise. The quality of possession required in a particular case depends upon the type of land in dispute. 319 So.2d 766, 772. A footnote refers to authorities indicating that the type of corporeal possession considered sufficient is governed by the use to which the land is destined and changes with the nature of the property. In the Cook case it was stated that the particular acts which constitute sufficient possession for acquisition by acquisitive prescription of 30 years vary with the circumstances of the individual case.[4] See cases cited at 322 So.2d 880, 882. In Dunn v. Pipes, supra, parts of residential lots were involved in a possessory action. The prevailing party in that case was found to have exercised the necessary possession, primarily through mowing the grass on the disputed area. Considering that in this case the disputed area consists entirely of an unimproved lot in a residential area, we are of the opinion that mowing the grass on the lot at the frequency of every two weeks by Samuel Cross constituted sufficient acts of possession by Samuel Cross.
In challenging the sufficiency of the acts of continued mowing as constituting possession, plaintiff-appellant focuses special challenge on the word "unequivocal". He asserts that possession must be "actual, physical, open, public, unequivocal, continuous, uninterrupted" and must show an intent to possess as owner. Plaintiff-appellant maintains that mowing grass on a residential lot is an equivocal act and does not evince an intent to possess as owner. It is urged that to so hold would place ownership or possession of any unimproved property in jeopardy, requiring fencing by the owner or other action to protect it from adjacent owners who might mow the grass simply to improve the appearance of their property.
Considering the totality of the circumstances of this case, we do not feel that affirmance of the trial court's judgment will set any precedent to the effect that mere mowing grass over a long period of time will, in of itself, enable a person to acquire property by acquisitive prescription. More must be shown, including the fact that it was done as owner by one claiming ownership. In any event, every case must be judged on its own facts. We make no judgment as to whether the possession of Samuel Cross and his father has been continuous and uninterrupted for the more than some fifty years of Samuel Cross' memory. Nevertheless, there seems never to have been any challenge to it. In fact, Reverend Medlock testified that the original fence on the west actually encroached on what his uncle considered to be his property *865 but made no issue of it. For the year preceding the attempt of plaintiff-appellant to survey the property, if not longer, there was no disturbance of the possession of Samuel Cross. Under the circumstance, we consider the periodic mowing done by Cross as sufficient acts of possession to justify a judgment that he be maintained in the possession of the property. In so holding we find that Samuel Cross mowed the grass considering himself to be the owner with intention of possessing it as owner.

ACTS OF POSSESSION BY WAGLEY
Plaintiff-appellant, Grover C. Wagley, maintains he has shown civil possession of the property in dispute by virtue of recordation of a deed to property which includes the property in dispute and by virtue of his corporeal possession of a portion of the tract included within his title. The deed is dated April 3, 1970, and was recorded April 10, 1970. Wagley claims corporeal possession of a part of what is described in his deed by himself and through his lessee, J. B. Salter. As previously noted, neither Wagley, or anyone possessing for him, has corporeally possessed the property in dispute. On the contrary, defendant-appellee, Samuel Cross, has possessed it corporeally. As a result, any constructive possession Wagley might otherwise claim has been lost.
In a similar situation, and in answer to a similar claim, in Norton v. Addie, supra, the Louisiana Supreme Court disposed of the claim in the following language:
Defendant maintains that because he holds a deed translative of title any act of possession on part of his land amounts to constructive possession of the whole and he is presumed to possess to the full extent of his title. La.C.C. arts. 3437, 3498, Marks v. Collier, 216 La. 1, 43 So.2d 16 (1949). However, the constructive possession of Addie and his ancestors in title was lost by the corporeal detention of the property by the Nortons beginning in 1904. By permitting their usurpation to continue without interference, Brown and subsequently Addie, lost constructive possession of the tract. See Robertson v. Morgan, [La.App., 116 So.2d 141], supra, La.C.C. art. 3449. As the Court of Appeal noted, the only physical use of the property by Addie has been his occasional hunting on it, and this is insufficient to establish his corporeal possession of the property or to interrupt plaintiff's possession.
For like reasons we are of the opinion that any constructive possession of any part of the larger property acquired by Wagley or his lessee, even though his deed may include the property in dispute, would avail Wagley nothing. All during the time that Wagley may have been possessing some smaller part of what is described in his deed, Cross was corporeally in possession of the specific property in dispute in this litigation. Hence, if Wagley ever had possession of any character, he lost it.

INTENT OF DEFENDANT-APPELLEE CROSS TO POSSESS AS OWNER
A further challenge plaintiff-appellant makes as to the possession of Samuel Cross is with reference to his intent to possess as owner. It asserted that Cross could not have intended to possess as owner because Cross recognized one T. A. Maxey as owner prior to 1972 and attempted to purchase the property from him. Actually, there was a deed from Maxey to Cross but the latter asserts that the title did not involve the disputed property. We see no need to pass on these issues inasmuch as they transpired more than one year before the disturbance which gave rise to this litigation and the possessory action of Samuel Cross as reconvenor. The evidence as a whole preponderates to establish that Cross did possess as owner.

ANSWER TO THE APPEAL BY SAMUEL CROSS
As the defendant-reconvenor-appellee, Samuel Cross filed an answer to the appeal filed by Grover C. Wagley. In his answer to the appeal Cross asks that the judgment of the trial court be amended as follows: (1) that the preliminary injunction decreed *866 on November 13, 1975 be vacated and set aside, (2) that he be awarded damages as prayed for in Article 18 of his reconventional demand, and (3) that he be awarded damages for frivolous appeal in a sum of not less than $5,000.00.
With respect to the demand for frivolous appeal we feel that the issues were sufficiently serious that the appeal can in no wise be considered frivolous and damages for alleged frivolous appeal will be denied.
In article 18 of his reconventional demand Samuel Cross alleges that he is entitled to damages for mental pain, suffering, anguish, inconvenience and interference with his use and enjoyment of the property in dispute. He claims damages for the trespass upon the property. He further claims attorney's fees as damages. In an amendment to the reconventional demand Cross asked that he be awarded expert witness fees. Although the trial court did not assign reasons for judgment, it evidently did not consider that Samuel Cross had established entitlement to damages. We do not find that manifest error has been shown in this regard and the demands of appellee in his answer to the appeal seeking damages will be rejected.
The claim of Samuel Cross for an award of expert witness fee is set forth in his brief. Claim is made for the sum of $132.08 for Mr. Adrian Demery who was qualified as an expert photographer and whose bill for services in this amount is in the record. Mr. Demery did not testify as an expert on subjects or facts in dispute. He testified solely for the purpose of laying a foundation for the introduction of his photographs of the property in dispute and various land features depicted in the photographs. The photographs constituted the evidence. Any testimony given by Mr. Demery beyond that which he gave in laying such foundation were no more than observations of a layman and were not expressions of expertise. The costs of the photographs and the services of Mr. Demery were merely part of the cost of preparation for trial by the reconvenor-appellee, Cross, and part of the costs of presentation of his side of the case. We know of no authority under which such costs may be assessed as costs of the litigation.
Footnote one above sets forth in some detail the procedural history of this litigation. As noted in the footnote, the trial court issued a preliminary injunction on November 13, 1975, in favor of Wagley enjoining Samuel Cross from removing certain surveyor's stakes placed on the disputed property by the surveyor employed by Wagley, Mr. R. V. Leone. In the judgment signed by the trial judge after trial on the merits, the demands of Wagley were rejected "subject to the preliminary injunction herein decreed on the 13th day of November, 1975." On the reconventional demand of Cross, his possession was recognized and maintained as to the property specifically described in the judgment with the addition of the following qualifying provision: "The aforesaid possession is subject to the preliminary injunction decreed herein on the 13th day of November, 1975." The final portion of the judgment ordered Wagley, as the defendant in reconvention, to assert a petitory action to establish his ownership to the property within sixty (60) days from the date or lose his rights to further claim. No doubt the trial court anticipated that it would be required to hear further proceedings between the parties and would be required to adjudicate rights in a petitory action. We presume that he felt that it would be useful to maintain the surveyor's markers in place until the litigation was finally disposed of.
We note that the final portion of the decree in the judgment of November 13, 1975 makes the following provision: "This injunction shall remain in effect unless modified or vacated by subsequent order of this court, reserving unto the defendant any and all legal rights and remedies which he may have arising out of his reconventional demand." As we construe the judgment rendered and signed after trial on the merits of this possessory action, the trial court did not order and decree that the preliminary injunction be made permanent.
*867 Rather, by use of the words "subject to the preliminary injunction decreed herein on the 13th day of November, 1975," the trial court continued in effect the preliminary injunction with the provision quoted above, permitting it to modify or vacate the preliminary injunction by subsequent order. Had plaintiff-appellant not appealed and had failed to assert a petitory action within the sixty (60) day period allowed, the reason for the maintenance of the surveyor's stakes in place would have ceased. Then the defendant-appellee and reconvenor could have petitioned or moved the court to lift that portion of its final judgment continuing in force the preliminary injunction, the trial court could have done so and could have set aside and recalled the preliminary injunction.
Inasmuch as affirmance of the trial court's judgment will mean that the plaintiff-appellant must assert any claim to the ownership of the property in dispute within sixty (60) days from the time the judgment becomes final, the ultimate relief concerning permission to remove the surveyor's stakes will be within the authority of the trial court; we see no reason to vacate or modify any portion of the trial court's decree which reconvenor, Samuel Cross, has denominated a permanent injunction.
For the reasons assigned the judgment of the trial court is affirmed. The relief sought by defendant-reconvenor, Samuel Cross in his answer to the appeal is denied. Costs of this appeal are assessed to plaintiff-appellant, Grover C. Wagley.
AFFIRMED.
NOTES
[1] From the standpoint of pleadings in the case the issues were framed as follows. Grover C. Wagley acted first. He filed a petition simply asking for a temporary restraining order, and ultimately for issuance of preliminary and permanent injunctions to restrain Samuel Cross from interfering with Wagley's surveyor in placing boundary markers on property described in the petition of which he claimed to be owner. A temporary restraining order was granted on October 16, 1975. In response to the petition Cross filed an answer and a reconventional demand requesting (1) a temporary restraining order in his own behalf, and ultimately for preliminary and permanent injunctive relief to halt the survey by Wagley, and (2) also praying to have his right to possession recognized and maintained and requiring Wagley to file a petitory action within sixty days or lose his rights to assert ownership and (3) for monetary damages for disturbance of his possession. A temporary restraining order was issued on October 22, 1977, commanding Grover C. Wagley to refrain from entering upon the property described in Samuel Cross' petition and attempting to survey or place boundary markers.

With the pleadings in this posture, the original plaintiff, Grover C. Wagley, amended and supplemented his petition and asserted his own possessory action and prayed for damages. On November 30, 1975, the trial court heard the rule for a preliminary injunction filed by Wagley and took the rule under advisement. On November 13, 1975, the trial court signed a judgment in favor of Wagley granting a preliminary injunction against Cross enjoining the latter from removing certain surveyor's stakes placed by R. V. Leone, Surveyor. Commencement of the survey by Leone at the instance of Wagley is the event which precipitated this litigation. After trial on the merits, the injunction rendered on November 13, 1975, was continued in effect.
An exception of no cause of action was filed by Wagley on October 30, 1975, in response to exception to the reconventional demand of Cross. It was overruled on November 24, 1975. An exception of prescription was filed on Wagley's behalf on June 29, 1976, the date of the trial and was referred to the merits.
[2] As the trial court has not provided reasons for judgment, we presume that the exception of prescription was overruled. Plaintiff-appellant filed the exception and no specification of error is set forth in the brief of plaintiff-appellant and the issue is not briefed. However, we perceive no interruption prior to one year to bringing suit which caused the suit of Cross to be prescribed. See Liner v. Louisiana Fund and Exploration Co., 319 So.2d 766, 778-779 (La.1975).
[3] Hill v. Richey, supra, contains the following pronouncements concerning enclosures.

What the court means by "enclosures", as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. To say that the term means "enclosed only by a fence or wall" would be giving it a very strict and narrow construction, not justified or supported by the articles of the Code as we have hereinabove pointed out, and would lead to absurd consequences in some cases.
[4] The type of possession required for a possessory action is identical to that required to commence the running of acquisitive prescription. Liner v. Louisiana Land and Exploration Company, supra; Norton v. Addie, supra, and Hill v. Richey, supra. Article 3658 of the Louisiana Code of Civil Procedure requires the possessor to prove that he had possession at the time of the disturbance; that his quiet, uninterrupted possession shall have existed more than a year prior to the disturbance; that suit was instituted within a year of the disturbance.