524 So.2d 71 (1988)
David AMIS, et ux., Plaintiffs-Appellees,
v.
J.D. MILLER, ex ux., Defendants-Appellants.
No. 87-228.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1988.
Rehearing Denied May 5, 1988.
Chambers & Trahan, Noble M. Chambers, Jr., Crowley, for plaintiffs-appellees.
Miller & Miller, Michael B. Miller, Crowley, for defendants-appellants.
Before GUIDRY, DOUCET and KNOLL, JJ.
GUIDRY, Judge.
On October 29, 1984, plaintiffs, David Antis and Gerry Ames Antis (hereafter Antis), filed this suit seeking to compel removal of an encroachment allegedly constructed by defendants, J.D. Miller and Georgia Sonnier Miller (hereafter Miller) on the Antis property. Antis alleges that the building constructed by Miller extended 3.85 *72 feet onto his property. Antis further alleged that the Miller building was constructed in violation of the zoning ordinance of the City of Crowley as well as the building restrictions established for the Country Club Subdivision wherein the Antis and Miller properties are located. Defendants filed an answer setting up several defenses. In response, defendants denied that their building encroached onto plaintiffs' property. Further, defendants urged that the restrictive covenants for the entire subdivision had been abandoned as a result of a series of violations which destroyed the general scheme of the Country Club Subdivision or, alternatively, that the restriction controlling proximity of construction to property lines had been abandoned; plaintiffs are without right to enforce the zoning ordinance of the City of Crowley; and, in the event encroachment is found, defendants are entitled to a legal servitude on the Antis property pursuant to the provisions of La.C.C. art. 670. In a supplemental answer and reconventional demand, defendants asserted a possessory action to the 3.85 foot strip of land in dispute.
The trial court, in its reasons for judgment, concluded that:
1. Miller's construction encroached 3.85 feet over onto the Antis property;
2. Miller did not maintain such possession of the property involved (3.85 foot strip) sufficient to maintain a possessory action;
3. Antis was without right to complain of a violation of the city zoning ordinance or to enforce compliance therewith;
4. the restrictive covenants of the Country Club Subdivision were still viable; and,
5. Miller was not entitled to a legal servitude under La.C.C. art. 670 Servitude.
Pursuant to these findings, the trial court rendered judgment ordering removal of the building constructed by Miller on the Antis property to a point 10 feet from the Antis-Miller property line.
Defendants suspensively appealed urging error in all of the trial court's findings except that regarding their lack of authority to enforce the City of Crowley zoning ordinance. Defendants also urge that the trial court manifestly erred in completely disregarding the testimony of Leslie Hill.[1]

FACTS
Antis purchased Lots 31 and 32 of the Country Club Subdivision in May of 1964. No improvements were ever constructed on these lots. Miller purchased Lot 30 of the Country Club Subdivision, with the home situated thereon, in May of 1977. The plat of the Country Club Subdivision which was introduced in evidence is attached as Appendix A.
The record reflects that, prior to the Miller purchase of Lot 30, his ancestor in title mowed and otherwise maintained a yard area south of his residence to a point marked by two pine trees, one located near Hoyt Avenue in the vicinity of the southeast corner of Lot 30 and the other located at the rear of the property in the vicinity of the southwest corner of Lot 30. The record does not reflect the exact location of these trees, but it can reasonably be determined by reference to a plat of survey of Lots 31 and 32 (attached as Appendix B) photographs introduced in evidence, and testimony of the witnesses that the trees are located on Lot 31, approximately 17 feet south of its north line.
According to Miller, when he purchased Lot 30, there existed three shrubs in line with the pine trees and the lawn had been maintained up to that point. Miller testified that he planted four additional shrubs in a straight line between the two pine trees. These shrubs existed for approximately two and one-half years until they were removed in order to store supplies needed for the remodeling of his home. Two shrubs on each end still remain.
According to Miller's testimony, from the year 1977 through the year 1984, he maintained *73 the lawn and mowed the grass on the south side of his residence up to the pine trees. He also used this strip of land to store pipe and park an automobile he purchased in 1982. The record reflects that the pipes were placed at the rear of the property in line with the pine trees and remained there for approximately two to three years. Additionally, during construction of the Miller addition, roofing materials were stored in the approximate same location.
In June of 1983, Miller began renovation of his residence, including the construction of a garage addition. According to his testimony, Miller always believed that he owned the property upon which the garage was constructed. He stated that when the garage was approximately 80% complete, he began to suspect that there might be an encroachment onto Lot 31 and, at that point, immediately notified Antis. According to Miller, Antis was notified in May of 1984. At the time Miller notified Antis of the possible dispute, the renovations, including construction of the garage, were 80% complete.
The parties virtually concede but, in any event, the record reflects that the encroachment of the garage extension to the Miller home is 3.85 feet across the north property line of Lot 31. Also, there is no question but that the building of the garage extension to the Miller home violates building restriction number 5 of the Country Club Subdivision. Restriction number 5 requires buildings to be built 10 feet from the side or rear lot line.

THE POSSESSORY ACTION ISSUE
In rejecting defendants' reconventional demand to be maintained in possession of the disputed strip, the trial court concluded that the possession exercised by Miller over the disputed strip was not of the quality required for maintenance of a possessory action. We find no error in this conclusion.
In Harper v. Willis, 383 So.2d 1299 (La. App. 3rd Cir.1980), writ denied, 390 So.2d 202 (La.1980), we discussed the possession necessary for maintenance of a possessory action stating:
"... LSA-C.C. art. 3436 requires two distinct elements for a person to acquire possession: (1) the intention of possessing as owner and (2) the corporeal possession of the thing. Our jurisprudence usually states that the term `corporeal possession' means the actual, physical, open, public, unequivocal, continuous, and uninterrupted possession of property with the intent of possessing it as owner. Gerrold v. Barnhart, 128 La. 1099, 55 So. 688 (1911); Wm. T. Burton Industries, Inc. v. McDonald, supra [346 So. 2d 1333 (La. App.)], Succession of Kemp v. Robertson, 316 So.2d 919 (La.App. 1st Cir.1975), writ denied, 320 So.2d 906.
It is well established that the `corporeal possession' required to bring a possessory action is identical to that required for acquisitive prescription of thirty years. LSA-C.C. articles 3499-3505; Hill v. Richey, et al., 221 La. 402, 59 So.2d 434 (La.1952); Johnson v. Merritt, 131 So.2d 562 (La.App. 2nd Cir.1961); Case v. Jeanerette Lumber & Shingle Company, Inc., 79 So.2d 650 (La.App. 1st Cir.1955); Broussard v. Motty, 174 So.2d 246 (La. App.3rd Cir.1965); Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975); Norton v. Addie, 337 So.2d 432 (La.1976); Wagley v. Cross, 347 So.2d 859 (La.App. 3rd Cir. 1977).
It is clear that the intent to possess as owner has to do with the subjective intent of one who professes to possess and does not mean that the possessor must pretend to have valid title rights. The possessor may actually have title, but in the possessory action that factor is significant only in determining intent. The intent may exist without title to the knowledge of the possessor, for as shown above, even our codes permit a person in bad faith or a usurper to maintain the possessory action. LSA-C.C. arts. 3450, 3452, and 3454 and LSA-C. C.P. art. 3660. In as much as the corporeal possession required as a predicate to a possessory action is the same as that required for acquisitive prescription of 30 *74 years, the corporeal possession must be open and notorious and adverse or hostile to the true owner and everyone else."
In our view, the acts of possession relied upon by Miller, i.e., the mowing of grass on the disputed strip and the occasional storing of building material thereon, standing alone, would not be of the quality required for acquisition of property under the prescription of 30 years and, therefore, will not suffice to support a possessory action.
The record does not establish that Miller mowed the grass or stored materials on the disputed strip with the intent to acquire its ownership. Further, the record does not support a conclusion that the acts relied upon by Miller were notorious and unequivocal acts of possession.
Following Miller's purchase of Lot 30, he merely continued to mow the lawn up to the two pine trees, as his predecessor had done. His obvious intent, like that of his predecessor, was to maintain a neat appearance of his lot which was adjacent to the vacant, unimproved property belonging to Antis. The record reflects nothing which would support a finding of intent on the part of Miller to possess this strip as owner adverse to Antis. Further, the acts of possession relied upon by Miller are equivocal and lack the qualities of hostility and notoriousness. Antis testified that, although Miller never sought permission to store pipe and building materials on the disputed strip, he allowed Miller to do so as a gesture of good will. Further, Antis did not object to Miller mowing the strip in question, although he did hire someone to mow Lot 31 and instructed him to mow the grass from telephone pole to telephone pole, physical objects which he believed were at the corners of his property.
In Wagley v. Cross, 347 So.2d 859 (La. App. 3rd Cir.1977), we recognized that the mowing of grass, over a long period of time, standing alone, was not sufficient to acquire property by acquisitive prescription, concluding that more must be shown, including the fact that it was done as owner by one claiming ownership. In Wagley, supra, more was shown. In the instant case, considering the totality of circumstances reflected by the record, plaintiff in reconvention has failed to establish his right to be maintained in possession of the disputed strip. The trial court did not err in this conclusion.

SUBDIVISION RESTRICTIONS
Defendants next contend that the building restrictions for the entire subdivision have been abandoned as a result of a series of violations which destroyed the general scheme of the original development. Alternatively, defendants contend that such violations reflect abandonment of building restriction number 5. Specifically, Miller argues that the construction and continued existence for a period in excess of 20 years of a housing project on Lots 53 through 75 of the subdivision has subverted the original plan or scheme of development which the restrictions were intended to implement.
The building restrictions governing the use of the property and the improvements to be constructed on lots in the Country Club Subdivision, which Miller contends were and continue to be violated by the contruction and continued maintenance of a housing project, read in pertinent part as follows:
"1. The use of said property is restricted for residential purposes, and no structures shall be erected, altered, placed or permitted on any lot other than a one or two-story detached single family dwelling, automobile garages and other appropriate outbuildings. The term `residential purposes' as used herein shall be held to exclude hospitals, duplex houses, apartment houses and churches.
2. No building shall be used for commercial purposes, and no business shall be operated within the said subdivision.
3. No residence shall be constructed on any of said lots with a total living area of less than 1,200 square feet, exclusive of carports, garages, etc.
4. Not more than one residence shall be constructed on any of said lots or portion thereof.
5. No building shall be located on said lots nearer than 25 feet to the front lot *75 line, or nearer than 10 feet to the side or rear lot line. Corner lots shall have two 25 foot setbacks.
. . . .
12. No commercial building of any type, public utility, or plant, shall be located in said subdivision, and no noxious or offensive trade or activity shall be carried on or upon any of the property in said subdivision, nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."
Defendant, J.D. Miller, who was employed as the executive director of the housing projects in question for 21½ years, testified regarding the composition and arrangement of the housing project. He stated that all units in the housing project are multi-family dwellings and all are duplex houses. There is an office and maintenance building associated with the project which is located in the subdivision and rental payments are collected at this office. Bachelor (efficiency) apartments comprise more than one-half of the housing project units and these apartments each contain a total living area less than 1,200 square feet. Miller testified that some of the buildings in the housing project were built across lot lines and some lots contained two buildings per lot. Although Miller did not measure the distance between buildings and side lot lines, he testified that the buildings were all constructed in close proximity one to the other.
The trial court apparently determined that the construction and continued maintenance of this housing project on Lots 53 through 75 of the subdivision did not reflect an intent on the part of the property owners in the subdivision to subvert the original plan of development. In reaching this conclusion, the trial court stated in its written reasons for judgment:
"The Defendants further allege that there was a housing authority with fifty-three to seventy-five (53-75) units in the subdivision, which violates the building restrictions. The testimony clearly established that the housing unit was in another area clearly separate from the residential area involved in this litigation."
We disagree and ultimately determine that the restrictive covenants applicable to the Country Club Subdivision have been abandoned.
This court stated in Gwatney v. Miller, 371 So.2d 1355, 1361-1362 (La.App. 3rd Cir. 1979):
"It is not every violation of a building restriction which will constitute its abandonment. Insubstantial, technical or infrequent violations which do not manifest an intent to subvert the original plan or scheme of development will not constitute an abandonment of the restrictions. However, when the property owners can be regarded as having abandoned the plan of development which the restrictions were intended to implement by virtue of their acquiescence to frequent and numerous violations thereof, such restrictions are considered abandoned. Edwards v. Wiseman, 198 La. 382, 3 So.2d 661 (1941)."
Lots 53 through 75 lie within the physical boundaries of the Country Club Subdivision and as such are made subject to the building restrictions adopted when the subdivision was created. Lots 53 through 75 are separated from the balance of the property situated within the physical boundaries of the subdivision only by an intervening street "Buck Sweeney Drive". (See Appendix A) We have not been cited to any authority and know of none which would support the trial court's conclusion that substantial and frequent violations of building restrictions in one area of a subdivision are irrelevant to a claim of abandonment involving another area of the same subdivision, particularly where the areas are in close proximity and separated only by an intervening street.
The record reflects that the construction and continued maintenance of the housing project on lots 53 through 75 of the Country Club Subdivision is in substantial violation of several of the restrictive covenants applicable to that subdivision. Further, such violations subsist on 23 lots, which collectively comprise almost 33% of the total *76 land area situated within the subdivision's limits. Under such circumstances, we conclude that the original plan or scheme of development which the restrictive covenants of the Country Club Subdivision were intended to implement has been abandoned and the trial court clearly erred in holding to the contrary. This conclusion renders Miller's complaint of error in the trial court's disallowance of Hill's testimony moot.

ARTICLE 670 SERVITUDE
Defendants contend they are entitled to a predial servitude over the 3.85 foot strip pursuant to the provisions of La.C.C. art. 670 and the trial court erred in failing to accord them that right.
La. Civil Code Article 670 provides as follows:
"When a landowner constructs in good faith a building that encroaches on an adjacent estate and the owner of that estate does not complain within a reasonable time after he knew or should have known of the encroachment, or in any event complains only after the construction is substantially completed the court may allow the building to remain. The owner of the building acquires a predial servitude on the land occupied by the building upon payment of compensation for the value of the servitude taken and for any other damage that the neighbor has suffered...."
La.C.C. art. 670 was enacted by Act 514 of 1977, effective January 1, 1978. In adopting this new article, the legislature's obvious purpose was to ameliorate the often harsh results reached under prior law when a landowner, in good faith, constructed a building that encroached on an adjacent estate. The article provides that when a landowner in good faith constructs a building that encroaches on a neighboring estate, and the owner of that estate does not complain within a reasonable time after he knew or should have known of the encroachment, or complains only after the structure is substantially completed, the court may allow the building to remain, awarding a predial servitude to the good faith encroacher upon the latter's paying compensation and any damages suffered by the neighbor.
In its written reasons for judgment, the trial court did not mention or discuss defendants' demand for a La.C.C. art. 670 servitude but impliedly rejected same when it ordered defendants' encroachments removed. Thus, we do not know and have no means of knowing why the trial court rejected this demand. Our careful examination of the record in this case prompts the conclusion that the trial court clearly erred when it rejected the Miller demand for a predial servitude.
The record reflects that Miller's encroachment on the Antis property was in good faith. Miller and his ancestor in title before him had mowed and otherwise maintained the strip in controversy and an area south thereof to the pine trees for many years without complaint from Antis. Miller testified that he always considered that his property extended to the pine trees. Although we previously determined that the possession exercised by Miller was not of the quality required for maintenance of a possessory action, we do not consider this conclusion at odds with a determination of Miller's good faith under Article 670. Although prior to construction, Miller made no effort to locate the south line of his property by survey, we do not believe that this circumstance makes him a bad faith encroacher. If a prior survey before construction were a requisite for good faith, there would be no need for Article 670. Presumably, if all constructions were preceded by an accurate survey, there would never be an encroachment. In sum, the evidence in the record clearly supports the conclusion that Miller is a good faith encroacher. We reached a like result under somewhat similar circumstances in Bushnell v. Artis, 445 So.2d 152 (La.App. 3rd Cir.1984).
Miller likewise satisfies the other element required by La.C.C. art. 670, i.e., failure of Antis to complain within a reasonable time after he knew or should have known of the encroachment or, in any event, after the structure was substantially completed. The record reflects that Antis *77 never did complain. Rather, the possibility of an encroachment was raised by Miller with Antis approximately one year after construction had begun. In this connection, Miller testified as follows:
"Q. I understand that you were the one that first made Mr. Antis aware of the fact that there may be some question as to ownership of that piece, is that correct?
A. Yes sir, on the very same day that I determined that perhaps there was a problem there, I immediately called his place to speak with him ..."
Likewise, the record establishes that when the encroachment issue was first raised the addition to the Miller home was approximately 80% complete.
The language of C.C. art. 670 makes an award of servitude discretionary with the trial court once the elements required have been satisfied. Although this be so, we believe that a refusal of servitude under the circumstances present in this case would constitute a clear abuse of discretion. Miller has satisfied the elements required by Article 670. If Miller is required to demolish the encroaching structure, he would not only lose that portion of the structure which encroaches but demolition would compromise his entire renovation project entailing a considerable financial loss.[2] This is the exact type of harsh result that C.C. art. 670 was intended to ameliorate. On the other hand, Antis owns adjoining vacant lots, each 100' × 120', which are no longer subject to the restrictive covenants of the Country Club Subdivision. Clearly, a balancing of the equities dictates that Miller be awarded a predial servitude pursuant to the provisions of La.C.C. art. 670.
We will amend the judgment of the trial court to award Miller a predial servitude of sufficient width so as to accomodate the encroaching structure (see Bushnell, supra, at page 155) upon payment by Miller of compensation for the value of the servitude and for any other damages that Antis may suffer. We are unable to determine from the record in this case the extent of the servitude which should be awarded Miller or the value of the servitude and the damages, if any, to which Antis is entitled. Accordingly, we will remand this matter to the trial court for such purpose, with leave being allowed both parties to introduce on remand such additional evidence as they may deem necessary.
Accordingly, for the foregoing reasons, it is ordered, adjudged and decreed that there be judgment recognizing J.D. Miller and Georgia Sonnier Miller to be entitled to a predial servitude on such portion of Lot 31 of the Country Club Subdivision (See Appendix B) sufficient to accomodate their good faith encroachment onto Lot 31, upon payment by J.D. Miller and Georgia Sonnier Miller to David and Gerry Ames Antis of a sum in money equivalent to the value of the predial servitude herein awarded and any and all damages which Antis will sustain, all pursuant to the provisions of La.C.C. art. 670. Further, this matter is remanded to the trial court for further proceedings and, in particular, for determination of the extent of the predial servitude to be awarded; the value of the servitude; and, any and all damages to which David and Gerry Ames Antis are entitled, with leave being granted to all parties to introduce such additional evidence for resolution of these issues as they deem expedient and necessary.
REVERSED IN PART AND REMANDED.
*78 
*79 
NOTES
[1] On appeal neither party asserts error in the trial court's conclusion that plaintiff was without authority to seek enforcement of the zoning ordinance of the City of Crowley and the issue is not briefed. Therefore, we express no opinion in regard thereto.
[2] Miller explained that the new enclosed garage which encroaches on the Antis property is only a small but integral part of the entire renovation project. Demolition of the garage area would require an invasion of and changes in the house structure, including the roof and living areas both upstairs and downstairs.