544 So.2d 1236 (1989)
William H. CUTHBERTSON, Plaintiff-Appellee,
v.
UNOPENED SUCCESSION OF Sam TATE, et al., Defendants-Appellants.
No. 88-184.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
*1237 J.W. Seibert III, Vidalia, for plaintiff-appellee.
Jerry Phillips, Paul T. Thompson, Byford Beasley, Baker, for defendants-appellants.
Before DOMENGEAUX, STOKER and KNOLL, JJ.
KNOLL, Judge.
Pauline Tate, the widow of Sam Tate, and Glen Tate and Ida Tate Kimball, the heirs of Sam Tate, appeal an adverse judgment of the trial court which determined that they failed to prove that they acquired ownership of a 79 foot wide strip of property along Lake Concordia by 30 years acquisitive prescription sufficient to defeat William H. Cuthbertson's petitory action against them.
The trial court recognized Cuthbertson's ownership of the disputed area just north of the Tates' property, set a time frame for the Tates to remove certain property located on the disputed tract, and set all the boundaries of the Tates' property.
The Tates appeal, contending that the trial court committed manifest error: (1) in finding that they failed to prove that they possessed the disputed property sufficient to affix the northern boundary beyond that described in their title; (2) in delineating their other boundaries, particularly their southern boundary; and, (3) in assessing all costs of litigation to them.

FACTS
The disputed property in this petitory action is located on Lake Concordia and involves a strip of land north of and adjacent to a 200 foot parcel of land bordering the lake which Sam Tate purchased on April 21, 1955. The record bears out Cuthbertson's ownership of the disputed strip of land by title as evidenced from his deed of acquisition on October 7, 1977, from Joseph Zuccaro; the Tates do not contest Cuthbertson's title to the disputed strip of land.
A topographical and boundary survey of the property in question was prepared jointly by the litigants and is reproduced hereinbelow for reference. The disputed property, as depicted on the survey, is north of a line between points 3 and 4 and south of Lot A.
*1238 
*1239 ACQUISITIVE PRESCRIPTION
The Tates contend that the trial court commited manifest error in finding that the old hog wire fence, the wooded area, and the old fence, the northernmost points to which they claim possession, were not visible boundaries sufficient to establish their defense to Cuthbertson's petitory action of acquisitive prescription of 30 years. They argue that they and their ancestors have maintained the disputed property to the northernmost points claimed.
Acquisitive prescription beyond title by possession to a visible boundary for a period of 30 years may be pleaded as a defense in a petitory action. Dubois v. Richard, 223 So.2d 198 (La.App. 3rd Cir. 1969). Likewise, it is clear that title prescriptions may be pled in boundary actions, and boundary prescriptions in title suits. Ledoux v. Waterbury, 292 So.2d 485 (La. 1974). In light of this jurisprudence, the following codal articles are applicable to the Tates' contention:
LSA-C.C. Art. 794
"When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possess for thirty (30) years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds." (Emphasis added.)
LSA-C.C. Art. 3486
"Ownership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith."
LSA-C.C. Art. 3487
"For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed."
Furthermore, a possessor without good faith may tack on to his own possession that of his ancestors in title to make up the required 30 years adverse possession provided that uninterrupted possession was exercised by the possessor as owner up to a visible boundary. Fruge v. Lyons, 373 So.2d 220 (La.App. 3rd Cir.1979).
A boundary is defined in LSA-C.C. Art. 784 as, "... the line of separation between contiguous lands. A boundary marker is a natural or artificial object that marks on the ground the line of separation of contiguous lands." The land actually, physically, and corporeally possessed by one as owner must be established with certainty; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952). Moreover, the quality of possession required up to a visible boundary in a particular case depends upon the type of land in dispute. Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La. 1975).
We have been favored with a well written factual description of the topographical data which forms part of the learned trial court's written reasons, which we incorporate herein, in pertinent part:
"It is the opinion of the Court that Sam Tate and his ancestors in title (A.E. Rogillio, Tom C. Wailes, C.C. Wailes, et al., C.B. Holdcraft, C.B. Holdcraft, Jr., and Robert E. Lancaster), each possessed the property beyond the two hundred (200) foot strip and into the disputed strip at issue to a `boundary' wherein some vestige of a fence once existed.
The evidence as to the existence of the fence is disputed. It is, however, the finding of the Court that at one time a fence existed along what Defendants claim is the northern boundary of their property. It is evident that part of the fence was removed years ago. A part of the fence which remains to this day is on the eastern end of the disputed northern boundary. This fence has fallen into disrepair and has no functional purpose. There exists a fence which runs for approximately sixty (60) feet along the disputed northern boundary on the western end of said boundary. Without question these portions of fence have existed for many years. (More than thirty [30] prior *1240 to the filing of this suit). There exists between the two portions of fence only a small grove of trees ... which Defendants allege is where the fence existed and remains as the boundary to the disputed northern boundary. It is the Opinion of the Court (which made an on-site visit to the property [at the request of the litigants]) that the tree grove delineates no boundary line as it is merely a small grove of trees running several feet from north to south. In essence then, there exists nothing to mark the boundary saving the vestige of the old fence on the eastern edge of the disputed northern boundary and the old fence on the western edge of the northern boundary leaving a distance of approximately one hundred fifty (150) feet virtually unmarked....
* * * * * *
One who wishes to adversely possess property in such a manner as to give notice to the public and all the world of the character and extent of their possessions must have a boundary that is well marked, (if not by a fence, then at least by a hedge, turn row, ditch, etc.) In this case, the boundary line is not so well delineated as to give notice that the adverse possessor possesses all the property up to and including this limit. There exists nothing more than markers on each end of a disputed line. There is no well defined boundary as defined by Article 784 of the Louisiana Civil Code. It is the Opinion of this Court the boundary line must be well defined as to give notice to all the world and especially the person against whom the adverse possessor is possessing the disputed property; that in fact, he is claiming the property as his own. The Court does not mean to say that there must be an unbroken fence along a boundary for there to be a line of separation between two contiguous lands. There must be a `visible boundary' which by its nature indicates to the public and to all the world that the property within the boundary is that of the possessor."
We have reviewed the trial court's factual conclusions relative to its determination that, considering the type of land in dispute, the two fence portions and the small grove of trees did not constitute a visible boundary. In light of the aforementioned codal and jurisprudential authorities, we find that the trial court was not manifestly erroneous in its determination of this question.
The Tates emphasize in brief that the evidence preponderates that they mowed the grass up to the grove of trees and the partial fences, and that under the holding of Wagley v. Cross, 347 So.2d 859 (La.App. 3rd Cir.1977), this was sufficient to prove their possession. The Tates misconstrue our holding in Wagley. In Wagley, the mowed area of grass in a residential subdivision was itself the `visible boundary' which, because of the character of the land possessed, was sufficient to give notice of the adverse possession of the property. As opposed to the property in Wagley, the property in the present case was semi-rural and was used as a camping area along Lake Concordia; because of the character of the land, mowing of the grass was by itself insufficient to constitute a visible boundary.
Nevertheless, the Tates argue that the old house, which extends on the survey beyond the Tates' title description, is a clear, visible marker of the boundary which they and their ancestors in title have possessed over 30 years. We agree.
This issue was squarely met in Ponder v. Fussell, 180 So.2d 413 (La.App. 1st Cir. 1965), wherein it was stated:
"Our careful consideration of LSA-C.C. Article 852 [now 794] and the numerous authorities which have interpreted its provisions, discloses nothing to indicate the required possession must be along a tangent, or that the possessor cannot acquire beyond his title unless his occupation extends to a visible boundary running the entire length of the common line of demarcation ... The jurisprudential requirement of possession to a visible boundary is based on the necessity of a tangible indication of the extent and limits of the possessor's claims. Certainly *1241 the side of a house or other building is a `visible boundary' within the meaning of the term as contemplated by the applicable authorities.
* * * * * *
As a general rule the construction of a building is an act indicative of assertion of ownership to the land on which it is situated, absent a prior contrary agreement between the interested parties because, by right of accession, the landowner is vested with certain prerogatives with respect to the structure erected on his premises by another ... [I]t is well established jurisprudence that when one constructs a building partially on the land of his neighbor, the owner of the land on which the edifice encroaches is relegated to the right to demand removal of that portion of the structure which encroaches on his property. The landowner's right to require removal of the offending structure does not alter the fact that the builder, whose construction encroaches on his neighbor, erected the improvement either in the erroneous belief he owns the land or with the deliberate intent to take possession of the adjoining property in bad faith. In either such instance, the builder possesses as owner. It is inconceivable that a person would construct a building on his neighbor's property under any other circumstances in the absence of a contrary explicit agreement. Under the provisions of LSA-C.C. Article 852 [now 794], the landowner who suffers the adverse possession for more than thirty years loses his proprietorship." (Citations omitted.)
In the case sub judice, it is abundantly clear from the evidence that the Tates' old house, situated mostly on their titled property, encroached upon Cuthbertson's property for a period well in excess of 30 years preceding the date of filing of this lawsuit. Thus, we find that the trial court was manifestly erroneous in failing to maintain the Tates' plea of 30 years acquisitive prescription as to that portion of Cuthbertson's lot which is actually occupied by the old house, and in ordering its eventual removal from the disputed property. Therefore, to the extent of the encroachment of the old house onto the disputed property, we find that Cuthbertson's petitory action is barred and, accordingly, we dismiss his petitory action to this extent. See Montgomery v. Breaux, 297 So.2d 185 (La.1974), which stands for the proposition that when a plea of acquisitive prescription is sustained as a defense to a petitory action, the petitory action is defeated and the court may not declare the defendant to be the owner of the property.

TATES' SOUTHERN BOUNDARY
The Tates contend that the trial court committed manifest error when it set all of the various boundaries of their property in its judgment. They argue that the judgment goes beyond the relief which may be granted in a petitory action since only their northern boundary was at issue in Cuthbertson's action against them. We agree.
In its judgment, the trial court provided:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the property of the defendants, Unopened Succession of Sam Tate, Glen Tate and Mrs. Sam Tate, ... is defined as lying North of a straight line running between point `1' and `2' and South of a straight line running between points `3' and `4', all such points colored in orange, and being depicted on the aforesaid Map of Portion of Helena Plantation prepared by Jordan, Kaiser & Sessions, Civil Engineers, Natchez, Mississippi, dated June, 1986, and identified as Exhibit PD # 1 which was introduced into evidence at the trial of this proceeding."
LSA-C.C.P. Art. 3651 provides:
"The petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right therein, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership."
In the case sub judice, the area in dispute involved only the northern boundary of the Tates' lot, i.e., between point "3" and "4" of the survey. We find that in setting all of the Tates' boundaries in accordance with the property survey, the trial court *1242 went beyond the confines of Article 3651 because such action does more than simply recognize Cuthbertson's ownership of the disputed area. Accordingly, we will recast the judgment, deleting the trial court's reference to those boundaries other than the Tates' northern boundary.

COURT COSTS
The Tates contend that the trial court should have assessed costs equally between them and Cuthbertson since the adjudication of the Tates' northern boundary also benefited Cuthbertson.
LSA-C.C.P. Art. 1920 provides that unless otherwise provided by law, the trial court may render judgment for costs against any party as it may consider equitable. Even if we were to consider this as an action to fix the Tates' northern boundary, since the boundary was fixed judicially, under LSA-C.C. Art. 790 the costs are taxed in accordance with the rules of the Code of Civil Procedure, and are apportioned equitably. Comment (b), LSA-C.C. Art. 790 and cases cited therein.
After carefully reviewing the record of these proceedings, we do not find that the trial court abused its discretion in assessing the Tates with the costs of court.
For the foregoing reasons, we affirm the trial court's rejection of the Tates' defense of 30 years acquisitive prescription since the grove of trees and two partial fences did not constitute a visible boundary, amend the trial court judgment to delete that portion which set all of the Tates' boundaries, dismiss Cuthbertson's petitory action to the extent that the old house on Tates' property encroaches upon the disputed property, and recast the judgment, in part, as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of the petitioner William Hugh Cuthbertson and against the defendants, the Unopened Succession of Sam Tate, Glen Tate, Ida Tate Kimball, and Mrs. Sam Tate, recognizing William Hugh Cuthbertson as the true and lawful owner of the property lying north of that line between points "3" and "4" and south of Lot A depicted on the map of portion of Helena Plantation prepared by Jordan, Kaiser & Sessions, Civil Engineers, Natchez, Mississippi, dated June 1986, and identified as Exhibit PD # 1 which was introduced into evidence at the trial of this proceeding, LESS AND EXCEPT that portion of the old house depicted in the aforementioned survey which encroaches onto the disputed property.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that to the extent that the old house encroaches onto the property described as lying north of that line between points "3" and "4" and south of Lot A on the above-referenced survey, Cuthbertson's petitory action is dismissed with prejudice.
In all other respects, not inconsistent with the holdings of this opinion, the remainder of the trial court's judgment is affirmed.
Costs of this appeal are assessed one-half to Cuthbertson and one-half to the Tates.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART, AND RENDERED.