631 So.2d 463 (1994)
Edward STERLING
v.
ESTATE OF Wilfred VICKNAIR, et al.
No. 93-CA-594.
Court of Appeal of Louisiana, Fifth Circuit.
January 12, 1994.
*464 Carl A. Butler, Bryan, Jupiter, Lewis & Blanson, New Orleans, for plaintiff-appellee, Edward Sterling.
J. Sterling Snowdy, Millet & Snowdy, LaPlace, for defendant-appellant Estate of Wilfred Vicknair, et al.
Before GAUDIN and GRISBAUM, JJ., and JOHN C. BOUTALL, J. Pro Tem.
JOHN C. BOUTALL, Judge Pro Tem.
This appeal is from a judgment rendered by the trial court on March 8, 1993. Plaintiff and defendant are owners of two parcels of land in LaPlace, Louisiana. Appellants, the Estate of Vicknair and Heirs (Vicknair), own "Parcel C," a tract of land which is situated west of and contiguous to the lot owned by appellee Sterling. Appellee lived on his lot for a number of years before purchasing it in 1971.
At some point in 1992, Vicknair obtained a buyer for Parcel C. However, the bank refused to approve loan financing because it noted surveys showing that two buildings on Sterling's lot, a shed and house trailer, encroached upon Parcel C.[1]
On November 23, 1992 and December 1, 1992, representatives of Vicknair's estate filed a rule for eviction against Sterling in the Justice of the Peace Court. Two hearings were held, on December 4 and 8, 1992. The Justice of the Peace entered judgment in favor of plaintiff, and gave Sterling notice of eviction.
On December 9, 1992, Sterling filed an appeal of the Justice of the Peace's ruling in the Fortieth Judicial District Court. Both parties agreed by stipulation to expand the pleadings beyond the summary eviction matter to encompass the litigation of the adverse possession and boundary dispute.
The judgment of March 8, 1993 rendered by the trial court vacated the Justice of the Peace Court's eviction on the grounds it had no subject matter jurisdiction. The court then found that while Sterling had not proven thirty-year acquisitive prescription as to the entirety of Parcel C, Sterling had shown the requisite possession of the portion of Parcel C upon which the shed stood. From this, the court redrew the boundary line between the two properties, awarding Sterling a 3.96 foot by 120 foot strip of the Vicknair property, as represented by diagram in the Appendix.
Following the denial of a motion for a new trial, plaintiff Vicknair perfected this appeal. On appeal, Vicknair argues that the trial court erred in 1) vacating the Justice of the Peace Court's judgment, and 2) finding that the appellee Sterling had adversely possessed a portion of Parcel C for thirty years. For the reasons which follow, we affirm in part, set aside in part, and remand.
We note the suit was originally characterized as an action of eviction in the Justice of Peace Court. It was conceded by all parties that no lease agreements existed in the present suit. The original pleadings and expanded pleadings now clearly show the dispute concerns ownership of the property. The provisions of LSA-C.C.P. Article 4913 and LSA-R.S. 13:2586 clearly deny Justice of the Peace Courts jurisdiction over cases involving title to immovable property. Hence, we affirm the trial court's ruling setting aside the eviction order.
We next consider Sterling's claim to ownership through acquisitive prescription. In order for a possessor to successfully claim ownership of immovable property under a plea of thirty-year acquisitive prescription, he must establish not only that there has been corporeal possession of the property for the required period of time, but also that there was positive intent to possess the property as owner during that time. LSA-C.C. art. 3486; Wm. T. Burton Industries, Inc. v. McDonald, 346 So.2d 1333 (La.App. 3rd Cir. 1977).
*465 The intent to possess as owner may be inferred from surrounding facts and circumstances. This intent should ordinarily not be inferred unless the possessor's actions (or facts and circumstances) are sufficient to reasonably apprise the public and the record owner of the property that the possessor intended to possess as owner. McDonald, supra.
The fact of possession creates a strong presumption that the possessor possessed as master and owner in regard to the prescription of thirty years, but that strong presumption will yield to the possessor's own testimony that he did not intend to originally possess the property as owner. Levy v. Germania Plantation, Inc., 395 So.2d 366 (La. App. 1st Cir.1981).
The burden of proof to establish facts essential to support a plea of thirty-year acquisitive prescription rests on the party who pleads it. McDonald, supra.
The evidence shows that Mr. Sterling began farming Parcel C around 1947. He also kept chickens, swine, and rabbits on the land, and also maintained a garden on Parcel C. Sterling testified that he farmed every year until around 1984, when he became disabled. However, his son Antoine still kept up part of the garden. The shed in question was built after Hurricane Betsy passed, or no earlier than January, 1965. The house trailer was placed upon part of the land in 1980. Mr. Sterling said that he knew that Mr. Vicknair owned the land, but that he had never asked his permission to farm it. Sterling told the Justice of the Peace that he had wanted to buy Parcel C, but felt the price was too high.
Mr. Sterling said that when appellants first asked him to remove the shed, he was willing to do so. However, he later changed his mind because he felt appellees were "pushing" him around. Sterling said that during all the time he used Parcel C he never believed he owned it. He just used it because it was vacant. However, in rebuttal testimony, Sterling said that he claimed ownership where the shed was situated.
A neighbor testified that he knew Parcel C to be owned by Vicknair, even though Sterling farmed it.
In its reasons for judgment, the trial court noted that Mr. Sterling had never possessed Parcel C with the intent to own. This conclusion is fully supported by the above testimony. As such, it is fatal to any claim of thirty-year acquisitive prescription of the whole of Parcel C, because the prescriptive estate will not begin to accrue unless the possessor possesses adversely and as owner. Therefore, we affirm the trial court's ruling denying Sterling's claim to the whole of Lot C by acquisitive prescription.
We next consider the trial court's ruling that Sterling had possessed as owner that portion of Parcel C on which the shed protruded. The trial court found Sterling had adversely possessed the portion of Parcel C, as designated by the Appendix, for over thirty years. However, the evidence is contrary to this finding.
It is undisputed that the shed was built no earlier than 1965, which caused it to be approximately 27½ years old at the time suit was filed. Side extensions were added later. Therefore, the requisite time period, thirty years, had not elapsed.
In the Order denying appellant's motion for new trial, the trial court stated:
"The Court acknowledges that he only built his shed sometime after 1965, but the Court finds, as a matter of fact, that he continually and adversely occupied that portion of Parcel C on which his shed is built for a period in excess of thirty (30) years based on the evidence submitted to the Court."
However, this finding is completely unsupported by the record. There is no evidence at all regarding Sterling's activity on that bit of ground before the shed was built. The record is completely silent as to any activity by Sterling on that location prior to 1965 when the shed was built. Therefore, we set aside that portion of the judgment awarding Sterling, through thirty year acquisitive prescription, the portion of Parcel C upon which the shed is built.
*466 Moreover, we note that even if Sterling had proven his claim to the shed, the new boundary line set by the trial court encloses more land than is actually covered by the shed.
Land that is actually, physically, and corporeally possessed by one as owner must be established with certainty; that is, the boundary markers must be sufficient to give definite notice to the public and all the world of the character and extent of the possession to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. Cuthbertson v. Unopened Succession of Tate, 544 So.2d 1236 (La.App. 3rd Cir.1989); Williams v. Peacock, 441 So.2d 57 (La.App. 3rd Cir.1983).
The record is silent as to any possessory activity by Sterling within the 3.96' by 120' strip other than the actual physical location of the shed. It appears that this new boundary was drawn this way because it prevented a "jigsaw effect" on the boundary and was neat and clean. However, the jurisprudence is clear that when a boundary is redrawn according to thirty-year prescription, it can encompass only that portion delineated by a physical discernable boundary. (A boundary marker is a natural or artificial object that marks on the ground the line of separation of contiguous lands. LSA-C.C. art. 784). The trial court's new boundary line is an arbitrary one unsupported by the record. Therefore, even if the shed had been built for thirty years or more, the new boundary could only enclose the shed itself, and not the extra portion awarded by the trial court.
The court in Cuthbertson, supra, was faced with an almost identical situation. The court noted at 544 So.2d pages 1240-41 that:
This issue was squarely met in Ponder v. Fussell, 180 So.2d 413 (La.App. 1st Cir. 1965), wherein it was stated:
"Our careful consideration of LSA-C.C. Article 852 [now 794] and the numerous authorities which have interpreted its provisions, discloses nothing to indicate the required possession must be along a tangent, or that the possessor cannot acquire beyond his title unless his occupation extends to a visible boundary running the entire length of the common line of demarcation ... The jurisprudential requirement of possession to a visible boundary is based on the necessity of a tangible indication of the extent and limits of the possessor's claims. Certainly the side of a house or other building is a `visible boundary' within the meaning of the term as contemplated by the applicable authorities.
* * * * * *
As a general rule the construction of a building is an act indicative of assertion of ownership to the land on which it is situated, absent a prior contrary agreement between the interested parties because, by right of accession, the landowner is vested with certain prerogatives with respect to the structure erected on his premises by another ...
[I]t is well established jurisprudence that when one constructs a building partially on the land of his neighbor, the owner of the land on which the edifice encroaches is relegated to the right to demand removal of that portion of the structure which encroaches on his property. The landowner's right to require removal of the offending structure does not alter the fact that the builder, whose construction encroaches on his neighbor, erected the improvement either in the erroneous belief he owns the land or with the deliberate intent to take possession of the adjoining property in bad faith. In either such instance, the builder possesses as owner. It is inconceivable that a person would construct a building on his neighbor's property under any other circumstances in the absence of a contrary explicit agreement. Under the provisions of LSA-C.C. Article 852 [now 794], the landowner who suffers the adverse possession for more than thirty years loses his proprietorship." (Citations omitted.)
The Cuthbertson court awarded the claimant only that area physically covered by the house.
*467 In conclusion, we find that the trial court erred in finding that Sterling acquired by thirty-year prescription that portion of Parcel C covered by the shed.
Accordingly, we affirm that portion of the trial court's judgment setting aside the eviction of Sterling and that portion of the ruling rejecting Sterling's claim to ownership of the whole of Parcel C, but set aside that portion of the ruling fixing the angular boundary between Parcel C and Sterling's property, and remand the case to the trial court with instructions to order the removal of the improvements by a specified date and, upon removal of the improvements, render a recordable judgment fixing the boundary and/or dismissing the action with or without a further evidentiary hearing as may be deemed necessary by the trial judge. Each party is to bear his own costs.
AFFIRMED IN PART; SET ASIDE IN PART, AND REMANDED.
NOTES
[1] Two different surveys are in conflict regarding the amount of encroachment. A 1986 survey, the Ruello survey, shows both the shed and house trailer as encroachments. The 1993 BFM survey, used for illustrative purposes by the trial court, shows only the shed encroaching on Parcel C. Surveyor Ruello testified at length during trial regarding his procedures.