1, GAUDIN, Judge.
This is an appeal by Harry Scott Jr. and other children of Harry Scott Sr. from a judgment of the 29th Judicial District Court dismissing their petition for ownership of real property because of 30 years’ acquisitive *504 prescription. The record fully supports this judgment and we affirm it.
The trial judge found, according to his assigned “Reasons for Judgment”, that the Scotts did “... not have sufficient continuous, public possession ... for 30 years” of any parts of lots 87 and/or 89 of the so-called Ranson Tract, together containing 19.554 acres fronting on Highway 90, St. Charles Parish.
In order for a possessor to successfully claim ownership of immovable property under plea of 30-year acquisitive prescription in accord with LSA — C.C. art. 3486, he must establish not only that there has been corporeal possession of the property for the required period of time, but also that there was intent to possess the property as owner during that time.
Further, land that is actually, physically and corporeally possessed by one as owner must be established with certainty; i.e., the boundary markers must be sufficient to give definite notice to the public and all the world of the character and extent of the possession to identify clearly the property possessed, and to fix with certainty the boundaries or limits thereof. See Sterling v. Estate of Vicknair, 631 So.2d 463 (La.App. 5 Cir.1994), and many other cases with similar holding.
Named defendants here were Mr. and Mrs. Donald J. Hogan, who purchased lots 87 and 89 in 1994. Harry Scott, Sr., who died in 1984, acquired lot 85, which is immediately adjacent to lot 87, in 1944.
Five of Harry Scott Sr.’s children testified, Harry Jr., Ernest, Lawrence, Irvin and Shirley. They said that the Scott family had occupied at least parts of lots 87 and 89 since 1944. Scott’s Lounge is on lot 85.
Regarding lot 89, appellants admit in their brief to this Court that evidence showing 30 years’ possession “is small.” However, the Scotts contend that they parked cars and trailers, kept a crayfish pond, had picnic grounds, maintained sheds, had a garden patch, etc. on all or part of lot 87. The testimony concerning these and other examples of possession, however, is uncertain as to time and extent of alleged occupancy. Trailers were placed on lot 87 but not until 1971.
The Scotts at no time paid taxes on lots 87 and/or 89, never installed any fencing and did not establish any definite boundary or boundaries. Appellees produced stipulated-to statements from a number of persons who disputed all of the Scotts’ claims of possession. The “crayfish pond”, apparently, was only a ditch running through the Hogan property. James Cologne, who had hunted on the Hogan land since 1946, said that he never saw a crayfish pond or any evidence of farming.
Ezekial Simmons, who knows the Scotts and who “walked this land many years,” said that the Scotts only farmed “a little” in the rear of their house although they maintained a garden “on the side of the bar.”
Anthony Detillier, who worked at a nearby Texaco facility for 36 years, never saw a crayfish pond or farming activity. Donald Champagne stated that he worked at Texaco from 1935 to 1977 and that he never saw either a crayfish pond or farming on the Hogan lots.
Alfred Meyer hunted on the property from 1969 to 1989. He sometimes saw junked vehicles but no crayfish pond or farming. Felix Peyregne said that the Scotts used the property alongside the bar to “temporarily” store vehicles.
The legal, registered owners of lots 87 and 89, not the Scotts, had asserted ownership of the property by leasing it to various individuals as far back as 1976.
There was more than sufficient evidence and testimony for the trial judge to deny the Scotts’ claims. It appears, from the record, that there was sporadic use of lots 87 and 89 by members of the Scott family but the usage did not come close to constituting the level of possession required by Art. 3486.
In the alternative, the Scotts argue that if the December 30,1996 judgment is set aside, this case should be remanded for the trial judge to grant to the Scotts ownership of that part of the disputed lots occupied by them for over 30 years.
*505 This would present two problems. First of all, there was varying testimony among the Scott witnesses as to where a property line could be drawn. At least one witness said that all of lot 87 should be declared owned by the Scotts. At least one other witness said that the Scotts’ claim included all of lot 87 and part of lot 89.. At least one other witness said that a natural ditch running across the lots should be the court-established boundary. Another witness, Bobbie Jean Williams, who started working in the lounge in 1957, said that the Scott property extended to where the “little shed” was and to the picnic area.
A far more significant problem is the trial judge’s finding that the Scotts had not proven continuous 30-year possession of (my, part of either lot 87 or lot 89. To succeed under Art. 3486, a petitioner must show that a tangible, visible boundary indicating the extent of the possessor’s claims had been established. Such was not the case here.
AFFIRMED.